[No. D055087. Fourth Dist., Div. One. Aug. 9, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
AHMANDA DIA JONES, Defendant and Appellant.

COUNSEL

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Pamela Ratner, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

AARON, J.—

## I.

## INTRODUCTION

Defendant Ahmanda Dia Jones appeals from her conviction for shooting at an occupied vehicle. A jury convicted Jones of attempted voluntary manslaughter and of shooting at an occupied vehicle after an incident in which Jones shot at a man with whom she had a disagreement concerning payment for sexual services. During deliberations, the jury asked the court whether a person could be convicted of shooting at an occupied vehicle if her body was outside the vehicle, but her hand and/or the gun were inside the vehicle when she pulled the trigger. In response to the jury's question, the court instructed the jury that a person could be convicted of shooting at an occupied vehicle under those circumstances.

██ On appeal, Jones contends that the trial court erred in instructing the jury that it could convict her of shooting at an occupied vehicle if it believed that her hand and/or the gun were inside the vehicle when she shot into the vehicle. We reject this contention and conclude that the trial court correctly instructed the jury that a person standing outside a vehicle who, while holding a gun, reaches into the vehicle through an open window or door and fires the gun, may be convicted of shooting "at" an occupied vehicle. We therefore affirm the judgment of the trial court.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual background*

#### 1. *Prosecution case*

On the night of August 29, 2008, Angel Torres arranged to meet with Jones, a prostitute whom he had met a few nights earlier, to have sex. Jones picked up Torres in a borrowed black two-door Ford Explorer and drove to a parking structure in Mission Valley.

After Jones parked the car, Torres paid Jones $60 to have intercourse with her and for her to orally copulate him. The two moved to the backseat of the vehicle, where Jones performed oral copulation on Torres for five to 10 minutes. After that, Torres engaged in intercourse with Jones. While they were having intercourse, Jones and Torres got into a dispute about the length of time that Torres was taking "to finish." Jones demanded more money from Torres to continue having intercourse. Torres said that he did not have more money. Jones then told Torres to get off of her, which he did, and threatened to drive away and leave him in the parking structure.

Torres took the keys out of the vehicle's ignition in order to prevent Jones from driving off without him. Jones became angry and got out of the vehicle. She lifted the hood of the Explorer and retrieved a gun from the engine compartment. Torres was inside the vehicle looking for his possessions when he heard a shot coming from the driver's side of the vehicle. Torres did not look to see where Jones was because he was thinking only about getting out of the vehicle. However, the last time that he saw Jones, she was standing in front of the car. As Torres was getting out of the vehicle, he heard two more shots. Torres ran through the parking structure to escape Jones and eventually made his way onto a nearby freeway, where he collapsed.

Paramedics took Torres to the hospital. Torres had been shot once in the neck and twice in the upper torso. None of the gunshot wounds was life threatening. Torres was treated at the hospital and released the following day.

#### 2. *Defense case*

Jones testified in her own defense. According to Jones, when she asked Torres for more money, he became upset and aggressive, which caused her to worry about her safety. Jones became frightened when Torres grabbed the keys out of the ignition. Torres continued to be aggressive with her, and she

resisted. Jones saw an object in Torres's pants and grabbed it. The object was a gun. As Jones raised the gun, Torres reached for her hand and the gun went off.

Jones testified that Torres threatened to kill her. She tried to get out of the vehicle, but the door was locked. She fired at Torres two more times. After Jones fired these shots, Torres got out of the vehicle and ran off.

## B. *Procedural background*

A jury convicted Jones of attempted voluntary manslaughter (Pen. Code,[1] §§ 664, 192)—a lesser included offense of attempted murder as charged in count 1, and of shooting at an occupied motor vehicle (§ 246 (count 2)). With respect to count 2, the jury found true the allegation that Jones personally discharged a firearm causing great bodily injury, within the meaning of section 12022.53, subdivision (d). As to count 1, the jury found true the allegation that Jones personally used a firearm within the meaning of section 12022.5.

Jones admitted that she had suffered a prior strike conviction within the meaning of sections 667, subdivisions (b) through (i) and 1170.12.

The trial court sentenced Jones to state prison for a term of 14 years on count 2, one year four months for a probation violation, and an additional 25 years to life for the section 12022.53, subdivision (d) enhancement, for a total term of 15 years four months, plus 25 years to life. The court stayed imposition of sentence on count 1.

## III.

## DISCUSSION

During deliberations, the jury sent the court a note in which the jury asked the following question: "If the Defendant's body is outside the vehicle but [the defendant] fires the gun when the gun is inside the vehicle does the law about shooting at an occupied vehicle apply[?]" After discussing with the attorneys how to properly respond to the jury's question, the court sent the jury a note that stated, "The answer to jury note #1 is yes."

After the court had sent the jury its response, the prosecutor raised a concern about whether the attorneys and the court might have misunderstood the jury's question because the question was somewhat ambiguous. The court then sent the jury the following direction: "Please disregard my answer to

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

jury note #1 and please restate the question as to exactly your specific concern." The jury responded with the following note: "Jury Instruction Page 26—[¶] The firing of a firearm within a vehicle does not constitute a violation of Section 246[.] [¶] Question—If the person is outside the vehicle but [her] hand and/or gun is inside the vehicle when the firearm is discharged is that a violation of 246 of the Penal Code?" After further discussions with counsel, the court ultimately wrote the word "YES" on the jury's note, signed it, and returned the note to the jury.[2]

Jones contends that the trial court erroneously instructed the jury that she could be found guilty of violating section 246 if the jury determined that her body was outside the vehicle, but that her hand and/or the gun were inside the vehicle, when she fired into the vehicle. Jones maintains that a person who shoots into a car while some portion of her body and/or the gun has broken the plane of the car cannot be convicted of shooting "at" an occupied vehicle.

Section 246 provides, "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar, as defined in Section 362 of the Vehicle Code, or inhabited camper, as defined in Section 243 of the Vehicle Code, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year."

Jones argues that the preposition "at" as used in section 246 does not include a situation in which one discharges a gun from within the relevant structure. She contends that this would be the situation if one's hand and/or

---

[2] The evidence does not appear to support the scenario that the jury posited in its question. There was no direct evidence that Jones was standing outside the vehicle with either her hand or the gun inside the vehicle when she shot at Torres. Torres did not see exactly where Jones was standing when she fired the first shot. He testified that Jones had gotten out of the vehicle to retrieve the gun, and said nothing that would indicate that Jones got back into the vehicle before she shot at him. Torres further testified that the shot came from the driver's side of the vehicle. However, according to Jones, she never got out of the vehicle, but instead, obtained the gun from Torres and pulled the trigger while they were both inside of the vehicle. Based on the jury's question, it is clear that the jury rejected Jones's version of events, and concluded that she was outside the vehicle when she shot at Torres. That Jones may have reached into the vehicle through an open door or window, thereby breaking the plane of the vehicle, when she shot at Torres appears to be mere speculation on the part of the jury. Nevertheless, because the jury asked the question and the issue was clearly on the mind of at least one juror, if we were to conclude that the court's response to the jury note was incorrect, we could not conclude that the resulting error was harmless. We must therefore determine whether the court correctly instructed the jury that it could find Jones guilty of violating section 246 even if her hand and/or the gun were inside the vehicle when she fired the gun.

the gun break the plane of the structure and are entirely or partially inside the structure at the time the discharge occurs.

To determine whether the statute requires that every part of the shooter and the gun be outside the relevant structure in order for a fact finder to conclude that the firearm was discharged "at" that structure, we must determine the legislative intent in prohibiting the discharge of a firearm "at" the structures enumerated in section 246. "The fundamental rule of statutory construction is that the court ascertain legislative intent so as to effectuate the purpose of the law. [Citation.] The provisions of the Penal Code are to be construed 'according to the fair import of their terms, with a view to effect its objects and to promote justice.' [Citation.] Nonetheless, the court cannot create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. [Citation.] The court must give effect to statutes according to the usual, ordinary import of the language employed in framing them. . . . [Citation.]" (*People v. Stepney* (1981) 120 Cal.App.3d 1016, 1019 [175 Cal.Rptr. 102] (*Stepney*).)

As both parties acknowledge, there is no direct authority that addresses whether a person may be convicted of section 246 if her hand and/or the gun are either entirely or partially inside the occupied vehicle when she shoots into the vehicle.[3] The cases in which courts have considered the location of the defendant in interpreting the meaning of "at" as used in section 246 have involved situations in which the defendant was either wholly inside, or wholly outside of, a building or dwelling. (See *Stepney, supra*, 120 Cal.App.3d at pp. 1018–1021 [no violation of § 246 where defendant was standing in a living room when he fired a shot at a television]; *People v. Morales* (2008) 168 Cal.App.4th 1075, 1081 [85 Cal.Rptr.3d 873] [no violation of § 246 where defendant fired shots into a kitchen from an attached garage]; *People v. Jischke* (1996) 51 Cal.App.4th 552, 556 [59 Cal.Rptr.2d 269] [defendant violated § 246 when he fired gun while standing in his own apartment but shot in the direction of the apartment below].)

Relying primarily on *Stepney, supra*, 120 Cal.App.3d at pages 1018–1021, in which the court determined that a defendant who was standing inside an occupied home when he shot at a television could not be convicted of section 246 because shooting from "within" the home did not constitute shooting "at" an inhabited dwelling house, Jones contends that "[t]here is no logical distinction between the conduct in *Stepney* and the conduct at issue here."

The *Stepney* court acknowledged that the word " 'at' is a word of many meanings," and that, "[a]n argument can be made that one can shoot at a

---

[3] There are several unpublished opinions in which courts have considered a similar question, as well as the related question whether a defendant may be convicted of section 246 if his gun broke the plane of an occupied building at the time of discharge.

building or automobile from within as well as from without." (*Stepney, supra,* 120 Cal.App.3d at p. 1019, italics omitted.) The *Stepney* court determined that the use of the word "at" in section 246 is ambiguous, and that because interpreting the statute in the defendant's favor would not result in an absurdity, the court was required to interpret the statute in that manner. (120 Cal.App.4th at p. 1019.) The *Stepney* court was careful to limit its holding to the facts before it, stating, "We carefully note, however, that a different question would be presented if a person fired a weapon from one apartment into an adjoining apartment, either through the common wall, or through the floor or ceiling. A different question would also be presented if an individual discharged a firearm in a hallway of a multiple family dwelling. We make these references to emphasize that our decision here is limited to the discharge of a firearm within a dwelling." (*Id.* at p. 1021.)

Based on *Stepney*, Jones contends that the preposition "at," as used in section 246, excludes "discharging a firearm 'within' or inside one of the listed structures." She maintains that "[w]here the shooter's hand that holds the gun and pulls the trigger is inside the structure, the gun is discharged 'within' the structure and thus not 'at' the structure." However, we are not persuaded that the relevant inquiry is whether the *gun* is "within" the structure at the time it is discharged. Rather, the relevant inquiry is whether the *person* is or is not "within" the structure at the time she discharges the gun. The statute prohibits discharging a firearm "at" an occupied structure or vehicle; as the *Stepney* court concluded, *a person* who is inside an occupied structure cannot fire "at" that structure because the *person* doing the firing is within the structure.[4]

One would not normally consider a person to be "within" a vehicle if only her hand, or an object that she is holding in her hand, has broken the plane of the vehicle through an open window or door. Rather, in order to be considered to be "within" a vehicle, a person's entire body, or a large portion of the person's body, would have to be inside the vehicle. It follows that if the person is holding a gun and fires the gun after having broken the plane of

---

[4] The *Stepney* court used the following indirect language in describing the activity that is excluded from section 246's prohibition: "We conclude that the firing of a pistol within a dwelling house does not constitute a violation of Penal Code section 246." (*Stepney, supra,* 120 Cal.App.3d at p. 1021.) We do not believe that the *Stepney* court intended to suggest that the relevant question is whether the *gun* is within or without the structure when it is fired, but, rather, whether the person who fires the gun is within or without the structure. The facts in *Stepney* did not raise the possibility that a gun might be within a structure while the individual shooting it is outside of the structure, and the *Stepney* court appeared to assume that the gun would be discharged from the same location as the person doing the firing, vis-à-vis the structure.

the vehicle with either the gun or her hand and the gun, that person cannot be deemed to have discharged the gun from "within" the vehicle for purposes of section 246.

In *Stepney*, the defendant's entire body was inside the inhabited dwelling when he fired. In contrast, the question that the jury posed in this case presumed that the shooter was standing outside the vehicle when she fired the gun. For the reasons stated above, under the circumstances that the jury posited, the shooter cannot be considered to have fired from within the vehicle.

Further, the prohibition against discharging a firearm "at" the structures listed in section 246 must include a prohibition against discharging a firearm "into" those same structures. The *Stepney* court noted that "as originally proposed, section 246 [prohibited] discharging a weapon *into* a dwelling, but in the bill as enacted *into* was changed to *at*. [Citation.]" (*Stepney, supra*, 120 Cal.App.3d at p. 1020.) The *Stepney* court concluded that the change from "into" to "at" was meant "to enable prosecution of those who [shoot] at a building but miss." (*Ibid.*) We agree that this seems to be the most reasonable explanation for the change, and that the intent of the Legislature was to include within the scope of section 246 those persons who succeed in shooting *into* an inhabited home or occupied vehicle, as well as those who shoot in the direction of a home or vehicle, but miss the structure. Considered from this perspective, it seems clear that one who stands outside an occupied vehicle and sticks her hand and/or a firearm into the vehicle and shoots is firing *into* the occupied vehicle.

It would not be reasonable to conclude that the Legislature intended that there be a different result depending on whether a person places her hand or the firearm, entirely or partially, through an open door or window and fires into a vehicle while standing a foot away from the vehicle, or instead, fires into a vehicle without placing her hand or the firearm into the vehicle, while standing the same distance from the vehicle. There is simply no reasonable justification for such a distinction. In both situations, the occupant of the vehicle is particularly vulnerable, in that the victim has minimal opportunities to escape or otherwise protect himself from the bullets. (Cf. *People v. McDade* (1991) 230 Cal.App.3d 118, 127 [280 Cal.Rptr. 912] [noting that " '[v]ictims inside buildings are more vulnerable to felonious conduct than victims out of doors . . . [citation],' " in analyzing the term "inhabited dwelling" for purposes of first degree robbery].) In addition, in both situations, the shooter has the advantage of mobility over a captive victim.

█ We therefore reject Jones's argument that the trial court erred in instructing the jury that she could be convicted of discharging a gun *at* an

occupied vehicle under circumstances in which her hand or the gun were inside the target vehicle. We conclude that a person whose body is outside the occupied vehicle can be considered to have discharged a firearm "at" that vehicle, regardless of whether she happens to have broken the plane of the vehicle with her hand and/or the gun before pulling the trigger.

## IV.

## DISPOSITION

The judgment is affirmed.

Haller, Acting P. J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 17, 2010, S186255.