Filed 3/8/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S191400 |
| v. | ) | |
| | ) | Ct.App. 4/1 D055671 |
| MARTIN MANZO, | ) | |
| | ) | San Diego County |
| Defendant and Appellant. | ) | Super. Ct. No. SCS212840 |
| _____ | ) | |

Penal Code section 246 (section 246) makes it unlawful for any person to maliciously and willfully discharge a firearm at an occupied motor vehicle. In this case, defendant was convicted of violating section 246 by standing outside his truck and shooting Jose Valadez, a passenger. Defendant argues that because the gun had crossed the threshold of the truck at the time of the shooting, the gun was not "discharged 'at' the vehicle" but was instead discharged "within" the vehicle. According to defendant, "[w]hat matters under section 246 is what the shooting is 'at,' a determination that depends on the location of the discharge (the tip of the gun), not the location of the shooter." The Court of Appeal decided this was a reasonable construction of section 246 and invoked the rule of lenity to reverse defendant's conviction for shooting at an occupied vehicle.

Although we agree that the statutory text alone is susceptible of more than one interpretation, including an interpretation favoring defendant, reliable extrinsic aids to statutory construction convince us that the Legislature intended section 246

1

to apply to a person standing outside an occupied motor vehicle and shooting into it, even if the gun has crossed the plane of the vehicle.  Because we can discern the Legislature's intent in enacting section 246, there is no need to invoke the rule of lenity as "a tie-breaking principle" in this case.  (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1102, fn. 30.)  We therefore reverse the judgment of the Court of Appeal insofar as it reversed defendant's section 246 conviction and the accompanying true findings on the firearm and great bodily injury allegations.

## BACKGROUND

Defendant was convicted of the first degree murder of Jose Valadez (Pen. Code, § 187, subd. (a)),[1] the attempted premeditated murder of Jose Estrada (§§ 664/187), and shooting at the occupied vehicle in which Valadez and Estrada were seated (§ 246) causing great bodily injury (§ 12022.7, subd. (a)), all by personal use of a firearm (§§ 12022.5, subd. (a), 122022.53, subds. (b) & (d)).  Defendant was also convicted of unlawful possession of ammunition.  (§ 12316, subd. (b)(1).)  In a bifurcated proceeding, defendant admitted allegations that he had suffered two prior felony convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), two prior serious felony convictions (§ 667, subd. (a)), and three prior prison terms (§ 667.5, subd. (b)).  He was sentenced to 150 years to life, plus a consecutive five-year determinate term.  The issue on appeal concerns only the conviction for shooting at an occupied vehicle (for which punishment was stayed under section 654), and the statement of facts is limited accordingly.

On August 23, 2007, Valadez and his friend, Estrada, were walking near a convenience store in San Ysidro as defendant drove by in his truck.  Valadez

---

[1]     All further statutory references are to the Penal Code.

2

flagged down defendant, who had tattooed Valadez's right wrist, to ask for another tattoo. Defendant agreed, and Valadez and Estrada got in the truck. Defendant drove to his apartment to get his tattoo equipment.

About 20 minutes later, defendant returned to the truck, drove to the corner of the apartment's parking lot, and stood next to the driver's seat with the door open. He pulled a gun from his waistband and placed it on the seat. Valadez asked whether he could see the gun—a 7.62 x 25 mm Tokarev pistol that was commonly used in the Soviet military. Defendant instead picked up the gun, extended his arm, pointed it at Valadez and Estrada, and pulled the trigger, but the gun did not fire. Defendant removed the magazine, pulled out a bullet, and reloaded the gun manually. Then he aimed the gun and pulled the trigger again. This time, the gun fired. The bullet struck Valadez in his left cheek; a large fragment lodged in his brain. With an "evil trippy face" defendant pointed the gun at Estrada, but the gun misfired. The prosecution theory was that defendant shot Valadez to steal methamphetamine, worth up to $1,000, that was hidden in Valadez's cell phone.

The gunshot wound proved fatal. Steven Campman, a forensic pathologist, testified that based on the lack of stippling near the entry wound, the gun must have been at least two to three feet away from Valadez's head at the time of the shooting. Campman testified that Valadez's injuries were consistent with the gun's being about 27 inches away. Photographs of a police reenactment of the crime, which was based on Estrada's and Campman's testimony and which used the same truck and a replica of the gun, depicted the gun inside the threshold of the truck (and about 27 inches from Valadez's cheek) at the time the shot was fired. As for defendant himself, Estrada told police that defendant's "whole body" was outside the truck at the time of the shooting.

The Court of Appeal reversed the conviction for shooting at an occupied vehicle because of insufficient evidence. The court reasoned that, under the rule of lenity, section 246 must be construed as excluding the discharge from a firearm that has crossed the plane of an occupied motor vehicle: "[E]ven if the People are correct that section 246's language can be reasonably construed as prohibiting the discharge of a firearm within an occupied motor vehicle by a person standing outside the periphery of the vehicle, we nevertheless must adopt the alternative reasonable construction that section 246 does *not* prohibit such conduct." The court thus disagreed with *People v. Jones* (2010) 187 Cal.App.4th 266, which had reached a contrary conclusion on similar facts. Because of this published conflict, we granted review on our own motion to decide whether a defendant can be convicted of violating section 246 if the defendant was outside the vehicle at the time the firearm discharged, but the firearm itself was inside the threshold of the vehicle.

## DISCUSSION

Section 246 makes it an alternative felony-misdemeanor for "[a]ny person . . . [to] maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar, . . . or inhabited camper . . . ." This case arises from the fatal shooting of Jose Valadez, a passenger in a motor vehicle, by defendant, who was standing outside the vehicle but had thrust the gun into the vehicle at the time he fired the weapon. Whether a person who discharges a firearm that has crossed the plane of the vehicle but is himself outside the vehicle can be said to have violated this statute depends, as the parties concede, on the construction of the word "at." Defendant argues that "at" must be measured from the location of the firearm, such that any shooting that occurs after the firearm has crossed the plane of the vehicle is *inside*—not *at*—the vehicle. The People, on the other hand, contend

4

that "at" is to be understood from the perspective of the shooter, and that a person can shoot at an occupied vehicle as long as the shooter is outside the vehicle.

Statutory construction begins with the plain, commonsense meaning of the words in the statute, " 'because it is generally the most reliable indicator of legislative intent and purpose.' " (*People v. Skiles* (2011) 51 Cal.4th 1178, 1185.) "When the language of a statute is clear, we need go no further." (*People v. Flores* (2003) 30 Cal.4th 1059, 1063.) "At," however, is a short word with a long list of possibilities, " '[a] preposition of extremely various use, to which lexicographers have given many definitions and shades of meaning. It is a word of great relativity and elasticity of meaning and is somewhat indefinite, shaping itself easily to varying contexts and circumstances, and taking its color from the circumstances and situation under which it is necessary to apply it to surrounding objects. Aside from its context, it is not a word of precise and accurate meaning, or of clean, clear-cut definition, and it has been said that the connection furnishes the best definition.' " (*People v. Stepney* (1981) 120 Cal.App.3d 1016, 1019, fn. 3.)

The parties agree that the relevant definition of "at" in this statute is "[o]f motion directed *towards*: In the direction of, towards, so as to get *at*; often with hostile intent, 'against'; in *to run*, *rush*, *go*, *have*, *throw*, *shoot*, *let drive*, *aim*, *etc. at*." (1 Oxford English Dict. (2d ed. 1989) p. 739.) Accordingly, one may restate section 246 as prohibiting any person from maliciously and willfully discharging a firearm in the direction of or towards an occupied motor vehicle. But this dictionary definition does not resolve whether the connection contemplated by the word "at" is to be measured by the relationship between the shooter and the vehicle (as the People contend) or by the relationship between the firearm and the vehicle (as defendant contends). In common parlance, it can be reasonable to say that a person who is standing outside a vehicle and fires a weapon has shot at, in

5

the direction of, or towards the vehicle, even if the tip of the weapon has crossed the threshold of the vehicle.  On the other hand, we cannot conclude that the plain meaning of the statutory text necessarily excludes the construction proposed by defendant.  Either interpretation seems reasonable.

Because of this ambiguity, "[i]t is appropriate to consider evidence of the intent of the enacting body in addition to the words of the measure, and to examine the history and background of the provision, in an attempt to ascertain the most reasonable interpretation."  (*People v. Canty* (2004) 32 Cal.4th 1266, 1277.)  We may also consider extrinsic aids such as the ostensible objects to be achieved, the evils to be remedied, and public policy.  (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304.)  When construing a statute, "our goal is ' "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." ' "  (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919.)

The purpose of section 246, when it was enacted in 1949, is apparent.  It was to combat "the increasing frequency of shootings into homes by reckless, irresponsible and malicious persons."  (Beach Vasey, Legislative mem. to Gov. Warren re Assem. Bill No. 414 (1949 Reg. Sess.) June 13, 1949, p. 1.)  The 1976 amendment, which added "occupied motor vehicle" to the specified targets, was intended to strengthen the law prohibiting discharge of a firearm at a motor vehicle, which at that time required (for felony purposes) a showing the shooter intended to cause great bodily harm.  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3303 (1975-1976 Reg. Sess.) as amended May 5, 1976, pp. 1-2; see Veh. Code, former § 23110, subd. (b).)  According to an enrolled bill report prepared by the California Highway Patrol in support of the amendment, there had been "an alarming number of incidents in the recent past where a person has discharged a firearm into an occupied vehicle," with a "tremendous" potential for "severe or

6

fatal wounds." (Cal. Highway Patrol, Enrolled Bill Rep. on Assem. Bill No. 3303 (1975-1976 Reg. Sess.) Sept. 3, 1976, p. 1.) The bill's supporters believed that the act of discharging a firearm at an occupied vehicle, even in the absence of an intent to cause great bodily harm, was serious enough to warrant felony punishment. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3303, *supra*, at p. 2.)

The legislative history's expressly stated concern about the danger associated with shooting "into" a home or an occupied vehicle is in no way diminished if the shooter is so close that the gun breaches the plane of the home or vehicle. (See *State v. Mancuso* (N.C. 1988) 364 S.E.2d 359, 362 ["We cannot believe that the Legislature intended that a person should escape liability for this crime by sticking his weapon inside the occupied property before shooting. We hold that a firearm can be discharged 'into' occupied property even if the firearm itself is inside the property, so long as the person discharging it is not inside the property."].) As defendant acknowledges, the impetus for the 1976 amendment was concern over the likelihood of bodily injury in an occupied vehicle, regardless of the shooter's intent to cause such injury, " 'since the total area is more confined, giving exposure to flying bullets, glass and steel.' " Yet under defendant's interpretation, a shooter would be guilty of violating section 246 if the gun was pressed against a closed window, but the same shooter performing the same act would not be guilty if the window was open and the weight of the gun carried its tip across the threshold of the vehicle. Given that the danger to the occupants from " 'exposure to flying bullets, glass, and steel' " is the same in each scenario, defendant's proffered interpretation would defeat the evident purpose of the

7

statute.**2**  Indeed, as the People point out, "[t]he salient characteristics of shooting into a vehicle are that the shooter is likely to have a tactical advantage over the vehicle occupant, an advantage that comes from having his or her body outside the vehicle while the target is trapped inside, and one that is not diminished if his or her hand extends inside to trigger the actual discharge."

Moreover, defendant's interpretation would cause guilt to turn on such trivialities as the length of the barrel or the degree to which the shooter's arm was extended.  Although, in defendant's view, he should not be guilty of discharging a firearm at an occupied motor vehicle in this case, a person standing where defendant was standing *would* be guilty if, say, he were armed with a snub-nosed revolver or if his arm were not extended.  We find no indication that the Legislature intended the scope of section 246 to depend on such inconsequential matters, nor does defendant explain why the Legislature would have wanted to distinguish among these scenarios.  (See *People v. Jones*, *supra*, 187 Cal.App.4th at p. 274.)

Construing the statute to include a shooting in the direction of the specified building or vehicle as measured from the perspective of the shooter is—with the exception of the decision currently under review—entirely consistent with the case law relating to section 246.

---

**2**     Ample justification remains for distinguishing, as the statute does, between a person shooting from the outside of the vehicle or from the inside of the vehicle. As the People observe, "[o]ne who shoots from outside is often effectively blocked from the vehicle occupants.  This is true whether the shooter is sticking the gun through an open door or window to the vehicle, or is firing from across the street.  Thus, while there may be a reason for the law to distinguish between one who shoots from a position inside a vehicle and one who shoots from outside, there is no reason to distinguish between one who shoots from outside by reaching inside the vehicle and one who shoots from farther away."

Two cases have found no section 246 violation occurs when the person, the firearm, and the discharge of the firearm are all *inside* the target building or vehicle. In *People v. Stepney*, *supra*, 120 Cal.App.3d 1016, the Court of Appeal found insufficient evidence to support a section 246 conviction when the defendant climbed through a window into the victim's living room and fired a bullet into the television set. (*Stepney*, *supra*, at p. 1018.) "The most that can be said for [Stepney]'s conduct was that he intentionally discharged a pistol within a dwelling." (*Id*. at p. 1021.) In *People v. Morales* (2008) 168 Cal.App.4th 1075, the Court of Appeal found insufficient evidence where the defendant fired shots into the kitchen from the attached garage. The court characterized the pivotal legal issue as "whether defendant was inside the dwelling house or occupied building when he fired shots from the attached garage into the kitchen." (*Id*. at p. 1080.) Because it found the attached garage was " 'an integral part of the . . . residence,' " the court concluded "that he was not firing *at* an inhabited dwelling house or occupied building, but instead was firing *within* an inhabited dwelling, from one room of it into another." (*Ibid*.) Thus, "*a person* who is inside an occupied structure cannot fire 'at' that structure because the *person* doing the firing is within the structure." (*People v. Jones*, *supra*, 187 Cal.App.4th at p. 273.) Like the *Jones* court, we believe these decisions did not intend "to suggest that the relevant question is whether the *gun* is within or without the structure when it is fired, but, rather, whether the person who fires the gun is within or without the structure." (*Id*. at p. 273, fn. 4.) Neither *Stepney* nor *Morales* considered "the possibility that a gun might be within a structure while the individual shooting it is outside of the structure," and both cases "appeared to assume that the gun would be discharged from the same location as the person doing the firing, vis-à-vis the structure." (*Ibid*.)

The case law also shows that a section 246 violation can be stated when the person, the firearm, and the discharge of the firearm are all *outside* the specified building or vehicle. In *People v. Overman* (2005) 126 Cal.App.4th 1344, the defendant aimed his rifle at two coworkers as they ran towards the office of their employer, and fired six shots. (*Id*. at p. 1362.) Neither the building nor the coworkers were hit. The Court of Appeal held that "section 246 is not limited to shooting *directly* at an inhabited or occupied target. Rather, it proscribes shooting *either* directly at *or* in close proximity to an inhabited or occupied target under circumstances showing a conscious disregard for the probability that one or more bullets will strike the target . . . ." (*Overman*, *supra*, at pp. 1355-1356.) Similarly, *People v. Chavira* (1970) 3 Cal.App.3d 988 found sufficient evidence where the defendant and others "engaged in a fusillade of shots directed primarily at persons standing close to a dwelling. The jury was entitled to conclude that they were aware of the probability that some shots would hit the building and that they were consciously indifferent to that result." (*Id*. at p. 993.) In both cases, the shooter, like defendant, was outside the specified building or vehicle.

And, of course, a section 246 violation exists when the person and the firearm are outside the specified building or vehicle but the discharge is inside the building or vehicle. In *People v. Jischke* (1996) 51 Cal.App.4th 552, the defendant fired a gun from his apartment into the apartment below, where it struck a 14-year-old boy in the shoulder. Noting that the defendant's floor was the ceiling of the apartment below, the Court of Appeal reasoned that "[i]n shooting through his own floor, defendant necessarily shot into and 'at' the adjacent dwelling unit." (*Id*. at p. 556.)

None of these cases suggests that a defendant could avoid a section 246 conviction by shooting in the direction of an occupied motor vehicle from outside the vehicle but close enough that the tip of the weapon crosses the threshold of the

10

building or vehicle.  Indeed, *Morales*—which framed the critical issue as "whether *defendant* was inside the dwelling house or occupied building when he fired shots from the attached garage" (*People v. Morales*, *supra*, 168 Cal.App.4th at p. 1080, italics added)—suggests just the opposite.  Defendant's insistence that that the crucial question "is the location of the point of discharge—the tip of the barrel of the gun"—thus finds scant support in the legislative history, public policy, case law, or logic.

Defendant's fallback position—and the argument embraced by the Court of Appeal below—is that when a statute defining a crime is susceptible of two reasonable interpretations, the rule of lenity requires a court to prefer the interpretation that is more favorable to the defendant.  Both defendant and the Court of Appeal misapprehend the rule.  The rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute.  (*People v. Cole* (2006) 38 Cal.4th 964, 986.)  Rather, the rule applies " 'only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule.' " (*People v. Avery* (2002) 27 Cal.4th 49, 58, italics added.)  In other words, "the rule of lenity is a tie-breaking principle, of relevance when ' "two reasonable interpretations of the same provision stand in relative equipoise . . . ." ' " (*Lexin v. Superior Court*, *supra*, 47 Cal.4th at p. 1102, fn. 30.)

We do not face that degree of uncertainty in this case.  The legislative history, the purpose of the statute, general public policy concerns, and logic all favor an interpretation that would recognize a violation of section 246 when the shooter stands outside and fires at an occupied motor vehicle, regardless of whether the shooter is standing so close that the gun breaks the plane of the vehicle.  An interpretation exculpating a defendant in those circumstances, even if a reasonable reading of the statutory text, is not, for the reasons given above,

11

*equally* as reasonable as the one proffered by the People. The rule of lenity " ' "is not an inexorable command to override common sense and evident statutory purpose. It does not require magnified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of the whole remaining language." ' [Citation.] Or in the words of Justice Black, writing for the court in *United States v. Raynor* (1938) 302 U.S. 540, 552, the rule does not 'require[] that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope—nor does any rule require that the act be given the "narrowest meaning." It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislative body].' " (*People v. Anderson* (1987) 43 Cal.3d 1104, 1146.)

The Court of Appeal erred in invoking the rule of lenity on a lesser showing—i.e., merely because "section 246's language could be reasonably construed" in a manner favorable to defendant. Extrinsic aids reveal the legislative intent to criminalize defendant's conduct under section 246, making invocation of the rule of lenity unnecessary in this case. (*People v. Avery*, *supra*, 27 Cal.4th at p. 58 ["although true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent"].)

**DISPOSITION**

The judgment of the Court of Appeal is reversed to the extent it reversed the conviction for shooting at an occupied vehicle in violation of section 246, reversed the true findings on the allegations related to that conviction, and remanded for resentencing.  In all other respects, the judgment is affirmed.

BAXTER, J.

WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Manzo

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 192 Cal.App.4th 366
**Rehearing Granted**

_____

**Opinion No.** S191400
**Date Filed:** March 8, 2012

_____

**Court:** Superior
**County:** San Diego
**Judge:** Timothy R. Walsh

_____

**Counsel:**

Arthur Martin, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting, Kelley Johnson and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Arthur Martin
P.O. Box 5084
Klamath Falls, OR 97601
(541) 273-8738

Christine Levingston Bergman
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA 92101
(619) 645-2247