Filed 11/30/23  P. v. Ramirez CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080013 |
| v. | (Super.Ct.No. FVI17001930) |
| NATHAN JOAO RAMIREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Joseph B. Widman, Judge.  Reversed and remanded with directions.

Melanie L. Skehar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

After defendant and appellant Nathan Joao Ramirez admitted to violating his probation, in 2019 he was sentenced under Penal Code[1] section 1170, subdivision (h)(5)(A), to a split sentence of four years, with two years to be served in custody and two years to be served on mandatory supervision. In 2020, defendant was arrested on federal drug charges and was sentenced to 51 months in federal prison. Meanwhile, in the state court action, a warrant was issued for defendant's arrest and a petition to revoke mandatory supervision was filed. Defendant filed motions to quash his warrant, plead guilty, and run his state sentence concurrent with his federal sentence. The trial court denied the motions.

On appeal, defendant contends (1) the trial court misinterpreted the statutory language of section 1170, subdivision (h)(5)(B), and was unaware it had discretion to grant his motions based on the plain language of section 1170, subdivision (h)(5)(B); and (2) excluding those individuals on mandatory supervision from section 1203.2a relief violates equal protection principles. For the reasons explained, we conclude the trial court was unaware that it had discretion to grant defendant's request to terminate his mandatory supervision under section 1170, subdivision (h)(5)(B), and therefore reverse the order and remand the matter for the trial court to rehear defendant's motion to terminate his mandatory supervision consistent with this opinion.

---

[1] All statutory future references are to the Penal Code.

2

## II.

## PROCEDURAL BACKGROUND

In October 2017, defendant pled no contest to theft of identifying information from 10 or more persons (§ 530.5, subd. (c)(3); count 3) and admitted that he had sustained three prior prison terms (§ 667.5, subd. (b)). In return, the remaining allegations were dismissed, and defendant was placed on probation for a period of 36 months on various terms and conditions of probation, including serving 180 days in county jail on work release.

On February 15, 2019, a petition was filed to revoke defendant's probation based on defendant failing to appear for jail time, associating with known felons and drug users or sellers of drugs, and possessing a controlled substance. Four days later, on February 19, 2019, defendant admitted to violating the terms and conditions of his probation as alleged in the petition and was sentenced under section 1170, subdivision (h)(5)(A), to a split sentence of four years, with two years to be served in county jail and two years to be served on mandatory supervision on various terms and conditions of supervision.

On July 20, 2020, defendant was arrested by federal authorities for conspiracy to distribute methamphetamine pursuant to 21 U.S. Code section 841, subdivision (a)(1).

On November 4, 2020, a petition was filed with a no-bail bench warrant to revoke defendant's mandatory supervision based on defendant failing to cooperate with, and follow directives of, his probation officer, failing to keep his probation officer informed

3

of his place of residence, using or possessing controlled substances, and associating with known felons or anyone engaged in criminal activity.

Defendant was convicted of the federal offense for conspiracy to distribute methamphetamine, and on February 4, 2022, he was sentenced to 51 months in federal prison, followed by five years of supervised release.

On May 27, 2022, defendant filed a nonstatutory motion seeking to quash his bench warrant, plead guilty, and run his state sentence concurrent with his federal sentence. On August 29, 2022, defendant filed another motion pursuant to section 1203.2a requesting that the trial court make a final disposition of the state case, execute sentence, have that sentence run concurrent with his federal sentence, and rescind all warrants. In both motions, defendant stated that the existence of the bench warrant precluded him from transferring to a halfway house or a residential reentry center, attending any drug treatment program available for his rehabilitation, participating in certain educational programs offered in federal prison, and receiving good time credits, favorable institutional work assignments, and higher institutional custody scores.

A hearing on defendant's motions was held on September 30, 2022. Defendant was not present but was represented by counsel. The trial court indicated that it was "initially inclined to, essentially, give him what he wanted considering the length of his federal sentence. [¶] But then I sort of had second thoughts, procedurally." The court then inquired whether the parties had "a stipulation as to what" they wanted the court to do. Defense counsel responded that he "would offer a stipulation." After the prosecutor

4

stated, "No," the court heard argument from the parties. Defense counsel argued that defendant's state conviction from 2017 was "stale" and asked the court to "consider just sentencing him so that way his sentence is complete, supervision is over, [and] he can move on." In response to the court's query, defense counsel confirmed that defendant also sought to rescind the bench warrant and terminate the state case. The trial court acknowledged that having a warrant out can affect what security classification a federal prisoner may receive.

After noting that there was a warrant for defendant's arrest because he had absconded from supervision and committed a new crime that resulted in a federal prison commitment, the prosecutor argued that the trial court should deny defendant's motions or request for relief for two reasons. First, the prosecutor stated that defense counsel's request offended the sense of justice because what he was requesting would be to give defendant a "pass for not complying" with the court orders "based on his commission of a new crime in another jurisdiction." Second, the prosecutor explained: "Second, legally, there's no vehicle by which this Court can grant his request. His request specifically is under [section] 1203.2(a) which requires him to be sentenced to probation, and then be committed to another sentence, and then allow this Court to run that sentence concurrent or some other fashion; however, he's not on probation. Probation was revoked and terminated and he was sentenced to county prison. He was given a[ ] [section 1170, subdivision] (h) split sentence. [¶] The problem is the [L]egislature . . . failed to amend [section] 1203.2(a) to contemplate [inclusion] of split

5

sentences parolees from county prison in that remedy, and if the fact that they did not do so really means they meant to exclude such people from such remedy. [¶] So there's no legal way for this Court to one have jurisdiction to do it because it's in revoked status. He's not before this Court; and two, [section] 1203.2(a) doesn't grant this Court jurisdiction based on the circumstances."

Defense counsel responded that mandatory supervision is "the exact similar mechanism" as probation since both probation and mandatory supervision have many "parallels and similarities," and a defendant must check in with a probation officer while on mandatory supervision. In response to the court's question, defense counsel stated that there was no case law on this point. After the trial court conducted a brief research of any case law on point, the court noted that it had found no "cases on point" and that it was "left with . . . the plain reading of the statute." The court thereafter denied defendant's "request on the basis that the Court lacks authority under [section] 1203.2a." The court explained that while it agreed with defense counsel that "functionally, mandatory supervision does resemble probation" because "[i]t's a very similar procedure and function but the [L]egislature knows that. . . . And in many other areas, they make it very clear when the realignment system basically dictates a different kind of law enforcement sentence." Defendant timely appealed.

DISCUSSION

Defendant contends that the trial court erred in denying his request because the court misinterpreted the statutory language of section 1170, subdivision (h)(5)(B), and was unaware it had discretion to terminate his mandatory supervision based on the plain language and legislative intent of the statute.  He further asserts that if we determine neither sections 1170, subdivision (h)(5)(B), nor 1203.2a are applicable to grant the relief he seeks, then excluding those individuals on mandatory supervision from section 1203.2a relief violates equal protection principles because there is no rational basis for the Legislature's failure to provide an avenue for those defendants on mandatory supervision to terminate an underlying state case when they are serving time in a federal institution.

The People respond that section 1203.2a does not apply to defendants on mandatory supervision and section 1170, subdivision (h)(5)(B), does not authorize the relief defendant seeks.  The People further assert that precluding defendants on mandatory supervision from obtaining section 1203.2a relief does not violate equal protection.

A.  *Standard of Review*

This case involves statutory interpretation of section 1170, subdivision (h)(5)(B). This case also encompasses an interpretation of section 1203.2a, which is not "a model of clarity." (*In re Hoddinott* (1996) 12 Cal.4th 992, 1003, fn. 7 (*Hoddinott*); *People v. Holt*

(1991) 226 Cal.App.3d 962, 965 ["It is an unenviable chore to consider section 1203.2a. The statute reflects a disregard for careful drafting and contempt for the English language."].) Section 1170, subdivision (h), in part, controls those offenders placed on mandatory supervision with an imposition of a split sentence. (§ 1170, subd. (h)(5)(B).) Section 1203.2a governs the procedures for when a defendant has been granted probation in one case then subsequently is "committed to a prison in this state or another state for another offense." (§ 1203.2a.) The interpretation of a statute is a matter of law, which we review de novo. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562; accord, *People v. Mendoza* (2015) 241 Cal.App.4th 764, 774 (*Mendoza*).)

"""As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]' [Citation.] '"When the language of a statute is clear, we need go no further." [Citation.] But where a statute's terms are unclear or ambiguous, we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part."'" [Citation.]" (*People v. Clark* (2022) 81 Cal.App.5th 133, 144 (*Clark*), quoting *People v. Scott* (2014) 58 Cal.4th 1415, 1421 (*Scott*).)

Additionally, "[i]t is a settled principle of statutory construction that the Legislature '"is deemed to be aware of statutes and judicial decisions already in

existence, and to have enacted or amended a statute in light thereof. [Citation.]" [Citation.]'" (*Scott*, *supra*, 58 Cal.4th at p. 1424.) "Courts may assume, under such circumstances, that the Legislature intended to maintain a consistent body of rules and to adopt the meaning of statutory terms already construed." (*Ibid.*; see *People v. Harrison* (1989) 48 Cal.3d 321, 329; *People v. Wood* (1998) 62 Cal.App.4th 1262, 1270.)

B. *Legal Principles*

The Realignment Act, codified under section 1170, subdivision (h), in 2011, "significantly revamped California's penal system by creating two new categories of postrelease supervision: mandatory supervision upon release from jail and postrelease community supervision (PRCS) following service of a prison term." (*People v. Bryant* (2021) 11 Cal.5th 976, 982 (*Bryant*).) This case involves the former. "The [Realignment] Act shifts responsibility for the incarceration, rehabilitation, and postrelease supervision of some felons from the state prison system to local jails and probation departments. (Stats. 2011, ch. 15, § 450; § 1170, subd. (h)(1), (2), (5)(A) & (B); *Wofford v. Superior Court* (2014) 230 Cal.App.4th 1023, 1032.) For eligible felony offenders, the trial court must generally impose a split local sentence with execution of a portion of the term suspended and the defendant released from jail under terms of 'mandatory supervision.' (§ 1170, subd. (h)(5)(B); see also *id*., subd. (h)(5)(A).)." (*Bryant*, at p. 982.) When a defendant is on mandatory supervision, the defendant is supervised by the probation department "in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation." (§ 1170,

9

subd. (h)(5)(B).)  Although mandatory supervision has been characterized as "akin to probation" (*People v. Griffis* (2013) 212 Cal.App.4th 956, 963, fn. 2), mandatory supervision is "distinct from both probation and parole" (*Bryant*, at pp. 982-983).

Specifically, as relevant here, section 1170, subdivision (h)(5)(B), provides:  "The portion of a defendant's sentenced term that is suspended pursuant to this paragraph shall be known as mandatory supervision, and, unless otherwise ordered by the court, shall commence upon release from physical custody or an alternative custody program, whichever is later.  During the period of mandatory supervision, the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court.  *The period of supervision shall be mandatory, and may not be earlier terminated except by court order.  Any proceeding to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of Section 1203.2 or Section 1203.3.*"
(§ 1170, subd. (h)(5)(B), italics added.)

"[S]ection 1203.2a provides that defendants released on probation, who are then sentenced to 'a prison in this state or another state' in another case, may file a request for sentencing in absentia, i.e., forgoing probation in the first case, so as to have the potential to apply the time served to both cases.  If the trial court fails to act on the petition in a timely manner, it loses jurisdiction to impose sentence in the probation case." (*Mendoza*, *supra*, 241 Cal.App.4th at p. 773.)

10

Section 1203.2a, in relevant part provides: "If any defendant who has been released on probation is committed to a prison in this state or another state for another offense, the court which released him or her on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed for the offense for which he or she was granted probation, in the absence of the defendant, on the request of the defendant made through his or her counsel, or by himself or herself in writing . . . he or she states that he or she wishes the court to impose sentence in the case in which he or she was released on probation, in his or her absence and without him or her being represented by counsel.  [¶] . . . [¶] . . . [T]he court shall issue its commitment if sentence has previously been imposed.  If sentence has not been previously imposed and if the defendant has requested the court through counsel or in writing in the manner herein provided to impose sentence in the case in which he or she was released on probation in his or her absence and without the presence of counsel to represent him or her, the court shall impose sentence and issue its commitment, or shall make other final order terminating its jurisdiction over the defendant in the case in which the order of probation was made. . . . [¶]  Upon imposition of sentence hereunder the commitment shall be dated as of the date upon which probation was granted.  If the defendant is then in a state prison for an offense committed subsequent to the one upon which he or she has been on probation, the term of imprisonment of such defendant under a commitment issued hereunder shall commence upon the date upon which defendant was delivered to prison

11

under commitment for his or her subsequent offense. Any terms ordered to be served consecutively shall be served as otherwise provided by law." (§ 1203.2a.)

The purpose of section 1203.2a is to require the trial court to consider exercising its discretion to impose a concurrent sentence and to avoid inadvertent consecutive sentences through inaction. (*Hoddinott*, *supra*, 12 Cal.4th at pp. 999-1000.) Section 1203.2a does permit a probationer who, while on probation for an earlier case, receives a prison sentence in another criminal proceeding to request that probation be revoked and sentence imposed. (*In re White* (1969) 1 Cal.3d 207, 210.) Section 1203.2a serves to prevent a defendant from inadvertently being denied the benefit of section 669, subdivision (a), which applies when a defendant has been convicted of two or more crimes in different proceedings. Sentences under section 1170, subdivision (h), are prison sentences for purposes of making a section 1203.2a demand. (*Mendoza*, *supra*, 241 Cal.App.4th at pp. 785-794.)

C. *Analysis*

Defendant contends the trial court misinterpreted or was unaware of the statutory language of section 1170, subdivision (h)(5)(B), when it denied his request to terminate his mandatory supervision and believed it had no authority to do so. We agree.

As previously noted, under section 1170, subdivision (h)(5)(B), "[t]he period of supervision shall be mandatory, and *may not be earlier terminated except by court order*. Any proceeding to revoke or modify mandatory supervision under this subparagraph

12

shall be conducted pursuant to either subdivisions (a) and (b) of Section 1203.2 or Section 1203.3." (§ 1170, subd. (h)(5)(B), italics added.)

Section 1203.2, subdivision (a), provides in relevant part that at any time during the period of supervision the court may, upon rearrest of the person or issuance of a warrant for rearrest, "*revoke and terminate the supervision of the person if the interests of justice so require* and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their supervision, or has subsequently committed other offenses, regardless of whether the person has been prosecuted for those offenses." (§ 1203.2, subd. (a), italics added.)

Under section 1203.2, subdivision (b)(1), "[u]pon its own motion or upon the petition of the supervised person, the probation or parole officer, or the district attorney, the court may modify, revoke, or *terminate supervision* of the person pursuant to this subdivision." (§ 1203.2, subd. (b)(1), italics added.) That subdivision further provides, "After the receipt of a written report from the probation or parole officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or *terminate the supervision of the supervised person upon the grounds set forth in subdivision (a) if the interests of justice so require*." (§ 1203.2, subd. (b)(1), italics added.) Finally, under section 1203.3, subdivision (a), the trial court "has the authority at any time during the term of mandatory supervision pursuant to subparagraph (B) of paragraph (5) of subdivision (h) of Section 1170 to revoke, modify, or change the

13

conditions of the court's order suspending the execution of the concluding portion of the supervised person's term."  (§ 1203.3, subd. (a).)

Analyzing the express words of the statutory language, giving them a plain and commonsense meaning of sections 1170, subdivision (h)(5)(B), 1203.2, subdivisions (a) and (b), and 1203.3, a trial court has the authority to revoke, modify, and/or terminate mandatory supervision by court order.  Hence, the trial court here erred when it believed it did not have the authority to terminate defendant's mandatory supervision.  Our conclusion is supported by *People v. Camp* (2015) 233 Cal.App.4th 461 (*Camp*), a case relied upon by defendant.

In *Camp*, *supra*, 233 Cal.App.4th 461, the People challenged the trial court's decision to terminate the mandatory supervision portion of the defendant's split sentence early and modify his sentence to release him to the custody of the Immigration and Customs Enforcement Agency for deportation.  (*Id*. at p. 464.)  The People argued the trial court lacked "'authority to substantially modify the original judgment after it ha[d] been imposed and executed.'"  (*Id*. at p. 470.)  Our colleagues in Division One rejected the People's argument and held, under section 1170, subdivision (h)(5)(B), a trial court may terminate a defendant's mandatory supervision early without ordering the defendant to serve the suspended portion of the sentence.  (*Camp*, at pp. 464, 474.)  The court further noted, "neither former section 1170, subdivision (h)(5)(B)(i), nor subdivisions (a) and (b) of section 1203.2 or section 1203.3 contains any language that would suggest that

14

a court's power to terminate mandatory supervision is restricted in any manner." (*Id*. at p. 474.)

We find *Camp*'s majority opinion persuasive and decline the People's invitation to follow the dissenting opinion in *Camp*. (See *People v. Lopez* (2012) 55 Cal.4th 569, 585 ["dissenting opinions are not binding precedent"].) Thus, under section 1170, subdivision (h)(5)(B), the trial court had the express statutory authority to terminate defendant's mandatory supervision for violating the conditions of his supervision. As the *Camp* court noted, section 1170, subdivision (h)(5)(B), "contain[s] no limitation of any kind on a trial court's exercise of [its] authority" to terminate mandatory supervision. (*Camp*, *supra*, 233 Cal.App.4th at p. 470.)

We now turn to section 1203.2a. As explained previously, section 1203.2a, in relevant part states: "If any defendant who has been released on *probation* is committed to a prison in this state or another state for another offense, the court which released him or her on *probation* shall have jurisdiction to impose sentence . . . ." (§ 1203.2a, italics added.) By its express terms, examined in its entirety, section 1203.2a provides procedures for service of sentences by *probationers* incarcerated for a subsequent offense. However, defendant had been given a split sentence followed by mandatory supervision, not probation. "Under the Realignment Act, qualified persons convicted of nonserious and nonviolent felonies are sentenced to county jail instead of state prison. [Citation.] Trial courts have discretion to commit the defendant to county jail for a full term in custody, or to impose a hybrid or split sentence consisting of county jail followed

15

by a period of mandatory supervision." (*People v. Catalan* (2014) 228 Cal.App.4th 173, 178.) "A split sentence is a hybrid sentence in which a trial court suspends execution of a portion of the term and releases the defendant into the community under the mandatory supervision of the county probation department. Such sentences are imposed pursuant to Penal Code section 1170, subdivision (h)(5)(B)(i), a provision originally adopted as part of the '2011 Realignment Legislation addressing public safety.'" (*Camp*, *supra*, 233 Cal.App.4th at p. 464, fn. 1.)

Examining the statute's words, giving them a plain and commonsense meaning, we believe that section 1203.2a applies to persons placed on probation. "'''''When the language of a statute is clear, we need go no further.'''''" (*Clark*, *supra*, 81 Cal.App.5th at p. 144.) Furthermore, following the passage of the Realignment Act in 2011, the Legislature did not amend section 1203.2a. The Legislature "'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.]' [Citation.]" (*People v. Yartz* (2005) 37 Cal.4th 529, 538.) Under such circumstances, we may assume that "the Legislature intended to maintain a consistent body of rules and to adopt the meaning of statutory terms already construed." (*Scott*, *supra*, 58 Cal.4th at p. 1424.)

As explained above, the Realignment Act, codified under section 1170, subdivision (h)(5)(B), itself expressly sets forth, and limits, the means by which mandatory supervision may be revoked, modified, or terminated and does not include section 1203.2a among them. By its express terms, then, the Realignment Act precludes

16

defendant's claim that he could invoke the procedures generally available through section 1203.2a to terminate or modify his mandatory supervision. "The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.'" (*Whaley v. Sony Computer Entertainment America*, *Inc.* (2004) 121 Cal.App.4th 479, 484-485; *People v. Manzo* (2012) 53 Cal.4th 880, 885.) Here, the Legislature unambiguously limited the statutory mechanisms by which mandatory supervision may be revoked or modified, and we may not disregard that express directive.[2]

In sum, defendant did not qualify for section 1203.2a, but did so under section 1170, subdivision (h)(5)(B). While the trial court was correct that defendant did not qualify for the relief he sought under section 1203.2a, the court was unaware that defendant did so under sections 1170, subdivision (h)(5)(B), and 1203.2, subdivision (a). Accordingly, we reverse the trial court's order denying defendant's request to terminate his mandatory supervision and remand the matter for the trial court to rehear defendant's motion to terminate his mandatory supervision.

---

[2] If section 1203.2a was inadvertently excluded from section 1170, subdivision (h)(5)(B), in the Realignment Act, that oversight can be corrected by the Legislature.

IV.

DISPOSITION

The trial court's order denying defendant's request to terminate his mandatory supervision is reversed and the matter is remanded for a rehearing consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:


FIELDS
J.


RAPHAEL
J.