Filed 10/26/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>KIMBERLY MENDOZA,<br><br>　　Defendant and Appellant. | E059613<br><br>(Super.Ct.No. INF10001613)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Anthony R. Villalobos, Judge.  Reversed and remanded with directions.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Darren Indermill, Karl T. Terp, and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Kimberly Mendoza admitted alleged violations of probation and the trial court continued her on probation. Defendant appealed, requesting a certificate of probable cause to challenge the validity of the plea/admission and continuation on probation. Defendant contends that the trial court failed to act on a demand for sentencing (Pen. Code, § 1203.2a) she had filed several months earlier, and the trial court therefore lacked jurisdiction to rule on the violation of probation allegations, or to impose sentence or reinstate probation. We reverse, and remand with directions to terminate defendant's probation.

<u>FACTS AND PROCEDURAL HISTORY</u>

Defendant was charged in Riverside County with four drug-related offenses. The trial court suspended imposition of sentence and placed defendant on three years' probation in connection with the Riverside case. Nearly two years later, defendant was convicted of a new felony in a different county, San Bernardino County. Defendant was sentenced to 16 months imprisonment, to be served in the county jail. (Pen. Code, § 1170, subd. (h).)

Defendant filed a request on January 8, 2013, in the Riverside case to terminate probation and to impose sentence in absentia under Penal Code section 1203.2a. Defendant asked for a disposition of her probation in the Riverside County case, and waived her right to be present and her right to an attorney. In the past, Penal Code section 1203.2a applied only to state prison inmates because inmates sentenced to "a prison in this state" could only have been sentenced to a state prison. Accordingly,

2

a petition to impose sentence in absentia, when a *prison* sentence has been ordered to be served in the county jail, has never been expressly provided for by the terms of Penal Code section 1203.2a. In addition, the "petition" defendant filed lacked attestation by the prison warden, or the warden's designate, as required under the statute. The trial court called the matter for hearing on March 27, 2013. The prosecutor was present, but—unsurprisingly, given defendant's waiver of her presence—defendant was not. When the court found that defendant was not present, it stated, "We'll just drop it." The court never acted on defendant's request for sentencing.

Several months later, in June 2013, defense counsel filed a motion in the Riverside case for termination of probation under Penal Code section 1203.2a, because of the court's inaction. The People opposed the motion. The People contended that defendant's petition was invalid because it lacked a warden's attestation. The People also argued that terminating defendant's probation would not be in the interest of justice. Defense counsel submitted a reply, including a declaration from a defense investigator. The investigator averred that the form was a California Department of Corrections and Rehabilitation (CDCR) form, which appeared to have been prepared by a correctional officer on defendant's behalf, but not attested. Defendant's reply argued that her rights under Penal Code section 1203.2a could not be defeated by the neglect and omissions of correctional officers, and the lack of attestation would, at most, affect only her waiver of the right to counsel at the sentencing hearing. It could not wholly invalidate an inmate's demand for sentencing or her waiver of her right to be present.

3

A hearing on the alleged violation of probation in the Riverside case was held on July 9, 2013. Defense counsel's motion to terminate probation had been continued to July 12. At the violation of probation hearing, defendant's regular public defender (Daniel Yu) was not present; another deputy public defender (Trisha Luciano) appeared for purposes of the violation of probation hearing, but Luciano was not familiar with all the circumstances of the case. During a recess in the proceedings, defendant completed a form admitting the violation of probation and agreeing to be reinstated on Proposition 36 (substance abuse) probation. Attorney Luciano declined to join in defendant's waivers and admissions because she felt that defendant was admitting the violations of probation merely to gain release from custody.

The trial court apparently viewed the motion to terminate probation as inconsistent with the plea agreement to admit violations of probation and to reinstate probation, and inquired whether counsel wished to take the motion to terminate probation off calendar. Attorney Luciano asked the court to consider giving defendant a release on her own recognizance so that she could attend the scheduled hearing on July 12, 2013, to consider her motion to terminate probation. The court still took the view that the admissions and reinstatement to probation would require taking the termination motion off calendar. Defendant wished to proceed with the agreed disposition on the violation of probation hearing. The court then remarked that defendant's January request for immediate sentencing under Penal Code section 1203.2a failed to comply with the statutory requirements for such a request, because it was not signed by the warden or a designated

4

representative.  The court stated, "And so it appears that that [i.e., the warden's signature] is required.  So based on that, are you withdrawing the motion?"  Attorney Luciano acquiesced, stating, "Yes, Your Honor."  The court ordered the motion to terminate probation withdrawn, and proceeded to accept the negotiated disposition of the violation of probation allegations.  Defendant admitted the violations, and was reinstated on probation.  Counsel did not join in defendant's waivers and admissions.

On September 4, 2013, attorney Luciano filed a notice of appeal for defendant.  The notice alleged that the trial court lacked jurisdiction to rule on the violations of probation, because it had failed to act on defendant's demand under Penal Code section 1203.2a.[1]

Even though defendant withdrew her claims under Penal Code section 1203.2a and admitted several probation violations, she maintains on appeal that the trial court acted in excess of its jurisdiction.  Such acts present questions of law that may be raised for the first time on appeal, and corrected by the appellate court when brought to the

---

[1]  On March 27, 2014, defendant filed a request for this court to take judicial notice of the online San Bernardino and Riverside Superior Courts' dockets in defendant's cases in each county, respectively, and the minute order of March 27, 2013, in defendant's Riverside case.  The request was filed to support some of her factual assertions, e.g., that she received a sentence to county prison in the Riverside case, that the prosecutor was present but defendant was not at the hearing on March 27, 2013, when the court removed her motion from the calendar, and the treatment of defendant's motion to terminate probation in the San Bernardino case, and her admissions of violations and reinstatement on probation.  The requested matters are official acts and records of the courts of this state.  We grant defendant's request to take judicial notice of the requested items.  (Evid. Code, § 452, subds. (c) & (d).)

court's attention.  (*People v. Walsh* (1996) 49 Cal.App.4th 1096, 1106, fn. 12.)  The People agree that defendant's claims on appeal should be addressed on the merits.

ANALYSIS

I.  Issues and Standard of Review

Penal Code section 1203.2a provides that defendants released on probation, who are then sentenced to "a prison in this state or another state" in another case, may file a request for sentencing in absentia, i.e., forgoing probation in the first case, so as to have the potential to apply the time served to both cases.  If the trial court fails to act on the petition in a timely manner, it loses jurisdiction to impose sentence in the probation case. Here, defendant received a prison sentence in the San Bernardino case, to be served in the county jail pursuant to the 2011 Realignment Act.  (Assemb. Bill No. 109 (Stats. 2011, ch. 15, § 1); Assemb. Bill No. AB17 (Stats. 2011-2012, 1st Ex. Sess. 2011, ch. 12, § 1) (Realignment Act).)  She filed a form entitled "Request for Disposition of Probation, Waiver of Appearance and Right to Attorney," alleged to be pursuant to Penal Code section 1203.2a, in the Riverside case for which she was on probation.

The People argue that Penal Code section 1203.2a applies only to inmates actually sentenced to state prison.  The primary issue is whether a person who receives a felony prison sentence, but who is ordered to serve that sentence in a county jail under realignment, may file a similar demand for sentencing in absentia.  Secondarily, this case presents a question whether errors in the formal execution of the demand are fatal to the prisoner's request.

6

These issues call primarily for interpretation of legislation. The proper interpretation of a statute is a matter of law which this court reviews de novo. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

II. Defendant Was Entitled to File a Petition Under Penal Code Section 1203.2a

### A. Background: Language of the Statute and Legislative Purpose

" 'In construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said and the plain meaning of the language governs." [Citation.]' " (*People v. Coronado* (1995) 12 Cal.4th 145, 151.) In addition, the words must be " 'read in context, considering the nature and purpose of the statutory enactment.' [Citation.]" (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 777.) In accordance with these principles, we turn first to the language of Penal Code section 1203.2a.[2]

---

[2] Penal Code section 1203.2a presently provides: "If any defendant who has been released on probation is committed to a prison in this state or another state for another offense, the court which released him or her on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed for the offense for which he or she was granted probation, in the absence of the defendant, on the request of the defendant made through his or her counsel, or by himself or herself in writing, if such writing is signed in the presence of the warden of the prison in which he or she is confined or the duly authorized representative of the warden, and the warden or his or her representative attests both that the defendant has made and signed such request and that he or she states that he or she wishes the court to impose sentence in the case in which he or she was released on probation, in his or her absence and without him or her being represented by counsel.

*[footnote continued on next page]*

Penal Code section 1203.2a provides that, if a defendant who has been released on probation in one case is later sentenced "to a prison in this state or another state for another offense," the trial court in the probation case has jurisdiction to revoke probation,

*[footnote continued from previous page]*

"The probation officer may, upon learning of the defendant's imprisonment, and must within 30 days after being notified in writing by the defendant or his or her counsel, or the warden or duly authorized representative of the prison in which the defendant is confined, report such commitment to the court which released him or her on probation.

"Upon being informed by the probation officer of the defendant's confinement, or upon receipt from the warden or duly authorized representative of any prison in this state or another state of a certificate showing that the defendant is confined in prison, the court shall issue its commitment if sentence has previously been imposed. If sentence has not been previously imposed and if the defendant has requested the court through counsel or in writing in the manner herein provided to impose sentence in the case in which he or she was released on probation in his or her absence and without the presence of counsel to represent him or her, the court shall impose sentence and issue its commitment, or shall make other final order terminating its jurisdiction over the defendant in the case in which the order of probation was made. If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement. If the case is one in which sentence has not previously been imposed, the court is deprived of jurisdiction over defendant if it does not impose sentence and issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 30 days after defendant has, in the manner prescribed by this section, requested imposition of sentence.

"Upon imposition of sentence hereunder the commitment shall be dated as of the date upon which probation was granted. If the defendant is then in a state prison for an offense committed subsequent to the one upon which he or she has been on probation, the term of imprisonment of such defendant under a commitment issued hereunder shall commence upon the date upon which defendant was delivered to prison under commitment for his or her subsequent offense. Any terms ordered to be served consecutively shall be served as otherwise provided by law.

"In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, the court shall be deprived thereafter of all jurisdiction it may have retained in the granting of probation in said case."

impose sentence, and/or commit the defendant to prison under certain circumstances. The court loses jurisdiction to act if, after the occurrence of certain triggering events, it fails to do so within specified time limits.

1. Commitment of Probationer/Defendant to Prison Upon Notification to the Court by the Probation Officer

One set of circumstances concerns notification of the probationer's confinement in prison on a new offense, by the probation officer supervising the probationer. Under the second paragraph of Penal Code section 1203.2a, the probation officer supervising the probationer/defendant generally may, at any time that the probation officer learns of the defendant's imprisonment, report the defendant's confinement to prison to the court that released the defendant on probation. If the probation officer receives a specific notification in writing of the defendant's confinement, either from the defendant, or from defense counsel, or from the prison warden or other authorized representative, then the probation officer must, within 30 days, report the confinement to the court that released the defendant on probation.

The third paragraph of Penal Code section 1203.2a provides that, when the court that released the defendant on probation receives the report of the defendant's imprisonment from the probation officer, "the court shall issue its commitment if sentence has previously been imposed." On the other hand, "If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its

9

jurisdiction over defendant in the case within 60 days after being notified of the confinement."

The fifth paragraph of Penal Code section 1203.2a provides: "In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, the court shall be deprived thereafter of all jurisdiction it may have retained in the granting of probation in said case."

2. <u>Commitment of Probationer/Defendant to Prison Upon Notification From Prison Warden</u>

Another set of circumstances requiring action by the court supervising the probationer/defendant, also described in paragraph three of Penal Code section 1203.2a, is the "receipt from the warden or duly authorized representative of any prison in this state or another state of a certificate showing that the defendant is confined in prison." Upon receipt of such notice from the prison, the court, again, "shall issue its commitment if sentence has previously been imposed." And, as in the case of notification by the probation officer, paragraph three of Penal Code section 1203.2a further provides: "If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement."

10

3.  Imposition of Sentence Upon Request of Counsel or Defendant

Penal Code section 1203.2a also provides two additional alternative circumstances in which the court must respond to the probationer/defendant's prison commitment on a new offense:  notification in writing by defense counsel, or, if the defendant is not represented by counsel, by a written request of the defendant himself or herself.

The first paragraph of Penal Code section 1203.2a provides that, when a probationer who "is committed to a prison in this state or another state for another offense," the court that released the probationer/defendant has jurisdiction to impose sentence, if no sentence had yet been imposed, "in the absence of the defendant, on the request of the defendant made through his or her counsel, or by himself or herself in writing."  When the defendant makes the request himself or herself, and not through counsel, Penal Code section 1203.2a prescribes the formalities of the defendant's personal request in writing.  The writing must be "signed in the presence of the warden of the prison in which he or she is confined or the duly authorized representative of the warden, and the warden or his or her representative attests both that the defendant has made and signed such request and that he or she states that he or she wishes the court to impose sentence in the case in which he or she was released on probation, in his or her absence and without him or her being represented by counsel."

When the defendant has made such a request through counsel to be sentenced on the probation case, paragraph three of Penal Code section 1203.2a provides that "the court shall impose sentence and issue its commitment, or shall make other final order

11

terminating its jurisdiction over the defendant in the case in which the order of probation was made." The court imposes the sentence in the defendant's absence, although the defendant is represented by counsel. When the defendant is not represented by counsel, however, and makes the request personally, "in writing in the manner herein provided," the court is authorized to "to impose sentence in the [probation] case . . . in his or her absence and without the presence of counsel to represent him or her." Once more, as in the circumstance of a request for sentencing from the defendant's counsel, the court "shall impose sentence and issue its commitment, or shall make other final order terminating its jurisdiction over the defendant in the case in which the order of probation was made."

Paragraph three of Penal Code section 1203.2a makes a distinction between the circumstances in which sentence had previously been imposed, and the circumstances in which sentence had not been previously imposed. The court acts to commit the defendant to prison, if sentence was earlier imposed, upon the notifications of the probation officer or the prison warden. The court acts to impose sentence, if none was imposed earlier, on the defendant's request for sentencing in absentia, either through counsel or by individual request. "If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement. If the case is one in which sentence has not previously been imposed, the court is deprived of jurisdiction

12

over defendant if it does not impose sentence and issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 30 days after defendant has, in the manner prescribed by this section, requested imposition of sentence."

As noted earlier, paragraph five of Penal Code section 1203.2a provides: "In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, the court shall be deprived thereafter of all jurisdiction it may have retained in the granting of probation in said case."

4. Service of the Prison Commitment in the Probation Case

The fourth paragraph of Penal Code section 1203.2a provides that, when probation is revoked and sentence imposed, "the commitment [in the probation offense] shall be dated as of the date upon which probation was granted." However, "If the defendant is then in a state prison for an offense committed subsequent to the one upon which he or she has been on probation, the term of imprisonment of such defendant under a commitment issued hereunder shall commence upon the date upon which defendant was delivered to prison under commitment for his or her subsequent offense." Finally, the fourth paragraph provides that, "Any terms ordered to be served consecutively shall be served as otherwise provided by law."

5. Legislative Purpose:  to Allow a Defendant the Possibility of Serving Time on Both Offenses Concurrently

"When the prisoner requests imposition of sentence under section 1203.2a he receives the benefit of the possibility of concurrent sentences.  (*In re White* (1969) 1 Cal.3d 207, 211 [81 Cal.Rptr. 780, 460 P.2d 980].)  The [probation-granting] trial court and its clerk and probation officer are afforded the convenience of closing their files in a case which otherwise might remain undisposed of for years.  Moreover, the procedure seeks to give prisoners the benefit of prompt sentencing or other final disposition while avoiding the government's expenditure of time and funds to produce imprisoned defendants for unnecessary court appearances.  [Citations.]"  (*Hayes v. Superior Court* (1971) 6 Cal.3d 216, 222 (*Hayes*).)  There is no guaranty that a defendant will receive concurrent sentences, but "[t]he legislative purpose underlying section 1203.2a is to prevent the inadvertent denial of the benefit of concurrent sentencing under Penal Code section 669 and is structured to preclude the mechanical imposition of consecutive sentences by depriving the court of further jurisdiction over the defendant if the court fails to act within 60 days following notification of defendant's confinement.  [Citations.]"  (*Pompi v. Superior Court* (1982) 139 Cal.App.3d 503, 507.)

The primary question here is whether Penal Code section 1203.2a applies strictly only to those defendants serving time in a state prison, or whether it also applies to defendants "committed to a prison in this state," when they are committed to serve a sentence in "county prison," i.e., to serve a prison sentence, albeit in a county jail.

14

It is only in paragraph four of Penal Code section 1203.2a that the statute refers to confinement "in a state prison," rather than "in a prison in this state," and with no mention of prisons in other states. Paragraph four of Penal Code section 1203.2a prescribes the dates when the state prison commitment shall be deemed to commence, and refers to the service of consecutive sentences. Otherwise, Penal Code section 1203.2a states in paragraph one that it applies to defendants who are "committed to a prison in this state or another state," it refers in paragraph two to notifications to a probation officer from "the warden or duly authorized representative of the prison in which the defendant is confined," and in paragraph three mandates court action "upon receipt from the warden or duly authorized representative of any prison in this state or another state of a certificate showing that the defendant is confined in prison." It is not necessarily clear from the use of the terms "prison in this state," or "prison in which the defendant is confined" that the Legislature intended the benefit of Penal Code section 1203.2a to apply solely to "prisoners" confined in "state prison," as opposed to felons serving prison sentences in other institutions. The language of the statute is at least arguably ambiguous on this point. Penal Code section 1203.2a has not been amended since 1989—well before the Realignment Act was passed—and was not addressed directly in the Realignment Act.

15

The history of Penal Code section 1203.2a shows that the original version enacted in 1941 explicitly applied to probationers who were thereafter "committed to a State prison for another offense."[3]  A brief resumé of the provision's history and purpose was laid out by the California Supreme Court in *In re Hoddinott* (1996) 12 Cal.4th 992, 998: "When section 1203.2a was first enacted in 1941, it established two 30-day time periods and provided for mandatory revocation of probation and imposition of sentence . . . .  [See fn. 2, *ante*.]

"In 1943 the Legislature rewrote the statute, adding what are now the second and last paragraphs.  Paragraph two provided:  'The probation officer may, upon learning of such defendant's imprisonment, and must within 30 days after being notified in writing by the defendant or his counsel, or the warden or superintendent or clerk of the prison in which the defendant is confined, report such commitment to the court which released the defendant on probation.'  (Stats. 1943, ch. 321, § 1, pp. 1316, 1317.)  The last sentence of the final paragraph stated:  'In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, the

---

**3**  See Stats. 1941, ch. 645, § 1, p. 2100.  The original provision stated:  "If any person who has been released on probation is committed to a State prison for another offense, it is hereby made mandatory upon the probation officer of the county from which he was released on probation to report the commitment to the court within 30 days after being advised in writing of the commitment.  Within 30 days thereafter the court shall revoke probation and impose sentence.  The sentence of the court may be imposed in the absence of the defendant in such cases.  In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, such person may not thereafter be sentenced under any authority retained in the granting of the probation."

16

court shall be deprived thereafter of all jurisdiction it may have retained in the granting of probation in said case.' (Ibid.)

"Since 1943, section 1203.2a has been amended five times (most recently, in 1989). [Fn. omitted.] The most significant change occurred in 1963, when the statute was amended in response to case law requiring the defendant to waive presence and representation by counsel before a court could constitutionally impose sentence in his or her absence. (See *In re Perez* (1966) 65 Cal.2d 224, 230, fn. 3 [53 Cal.Rptr. 414, 418 P.2d 6]; *In re Klein* (1961) 197 Cal.App.2d 58, 62-63 [17 Cal.Rptr. 71].) At that time, the Legislature added the first paragraph, establishing the procedures by which an unsentenced probationer can constitutionally request sentencing in absentia. (Stats. 1963, ch. 2079, § 1, p. 4345.) In 1976 the statute was amended to increase from 30 to 60 days the time within which the court must make its final order terminating jurisdiction over a previously sentenced defendant. (Stats. 1976, ch. 376, § 1, p. 1024; see *People v. Martinez* (1975) 46 Cal.App.3d 736, 741, fn. 2 [120 Cal.Rptr. 362, 121 Cal.Rptr. 443].) In 1987, again in response to case law, the Legislature extended the right to request disposition under section 1203.2a to prisoners in other states and those committed to federal prison. (Stats. 1987, ch. 828, § 76, pp. 2610-2611; see *Hayes v. Superior Court* (1971) 6 Cal.3d 216, 220 [98 Cal.Rptr. 449, 490 P.2d 1137].) Yet, despite these amendments, the pertinent language of the second and final paragraphs has remained unchanged for more than 50 years, since 1943.

"Consequently, as presently written, section 1203.2a provides for 3 distinct jurisdictional clocks: (1) the probation officer has 30 days from the receipt of written notice of defendant's subsequent commitment within which to notify the probation-granting court (2d par.); (2) the court has 30 days from the receipt of a valid, formal request from defendant within which to impose sentence, if sentence has not previously been imposed (3d par., 4th sentence); and (3) the court has 60 days from the receipt of notice of the confinement to order execution of sentence (or make other final order) if sentence has previously been imposed (3d par., 3d sentence). Failure to comply with any one of these three time limits divests the court of any remaining jurisdiction. (5th par.)

"As we have previously explained, section 1203.2a was intended to provide a mechanism by which the probationary court could consider imposing a concurrent sentence, and to 'preclude[] inadvertent imposition of consecutive sentences by depriving the court of further jurisdiction over the defendant' when the statutory time limits are not observed. (*In re White* (1969) 1 Cal.3d 207, 211 [81 Cal.Rptr. 780, 460 P.2d 980].) The statute's second and final paragraphs, interpreted according to their plain language, do serve these purposes." (*In re Hoddinott*, *supra*, 12 Cal.4th 992, 999-1000.)

### a. Equal Protection Considerations Extend the Benefits of Penal Code Section 1203.2a to Out-of-state and Federal Prisoners

In 1944, the California Supreme Court stated in *People v. Williams* (1944) 24 Cal.2d 848 that Penal Code section 1203.2a did not apply to a probationer/defendant who had been committed to a state prison in another state. The defendant in *Williams* had

18

been admitted to probation for an offense in California in 1937, and was thereafter convicted of a new crime in Arizona in 1938. The defendant served 18 months in the Arizona state prison. The defendant's California probation was revoked in 1938, before the probationary period had expired, but sentencing on the California offense was placed off calendar because the defendant was in prison in Arizona. After the defendant's release from the Arizona prison, the defendant also served a term in a federal prison. The defendant appeared in the California court in 1943, long after the probationary period had expired. The defendant claimed on appeal that the judgment imposed by the California court was invalid because it was not pronounced until after expiration of the probationary period.

The court held that the defendant's probation was properly revoked within the probationary period, "but the defendant may be rearrested at any time until the final disposition of the case and brought before the court. There can be no final disposition of the case when probation is revoked until judgment is pronounced . . . . Generally, judgment must be pronounced in the presence of the defendant . . . . (Pen. Code, § 1193.) Under this section a defendant must be personally present, and if he is not the court cannot pronounce judgment unless a proper showing of diligence is made as required therein. . . . There are, of course, many reasons why a court might desire to have the defendant present when sentence is pronounced, and in a case such as we have here, where because of his confinement elsewhere it is not possible to produce the defendant at the time probation is revoked, the court may consider that, in the interests of justice,

19

judgment should not be imposed until defendant can be brought before the court."
(*People v. Williams*, *supra*, 24 Cal.2d 848, 853.)

In passing, the court also considered the possible applicability of Penal Code section 1203.2a, and stated, "Section 1203.2a is without application to this case for, as originally enacted in 1941 and clarified by amendment in 1943, it applies only to a probationer who is subsequently committed in this state." (*People v. Williams*, *supra*, 24 Cal.2d 848, 853.)

Later, however, as noted in *In re Hoddinott*, *supra*, 12 Cal.4th 992, the California Supreme Court had occasion to reconsider the issue—i.e., applicability of Penal Code section 1203.2a to persons imprisoned in other states or in federal prison—in light of an equal protection claim. (*In re Hoddinott,* at p. 999, citing *Hayes v. Superior Court, supra,* 6 Cal.3d 216, 220.) In *Hayes*, the defendant was placed on probation in 1968, for an offense committed in San Bernardino County in California. In 1969, while still on probation in California, the defendant violated probation by leaving the state and traveling to Nevada, and also by committing a robbery there. He was sentenced to 10 years in the Nevada state prison. In March 1969, one month after his Nevada conviction, the probation officer reported the defendant's incarceration to the San Bernardino court. The San Bernardino court revoked the defendant's probation ex parte, and issued a bench warrant for the defendant. The warrant was placed as a detainer on the defendant's record with the Nevada prison authorities. (*Hayes,* at p. 220.) The detainer caused the Nevada authorities to assign the defendant to a maximum security

facility, which in turn limited his opportunities to participate in educational or rehabilitative programs, and adversely affected his parole eligibility. (*Ibid*.)

Starting in May 1969, the defendant wrote a number of letters and motions, sent to the San Bernardino court, asking to recall the bench warrant and reinstate probation, or to produce the defendant in court for hearing and disposition of the California case. The San Bernardino court denied these requests. (*Hayes v. Superior Court*, *supra*, 6 Cal.3d 216, 220-221.)

Penal Code section 1203.2a provided a procedure for probationers who are committed to prison in California to "obtain relief from the harmful uncertainty of other outstanding California convictions as to which he has been granted probation with imposition or execution of sentence suspended. That procedure benefits both the prisoner and the state. 'Fairness to one committed to a state prison and proper administration by the prison officials and the Adult Authority require that such outstanding convictions be reduced to judgment or be otherwise finally disposed of by termination of the trial court's jurisdiction.' [Citation.] When the prisoner requests imposition of sentence under section 1203.2a he receives the benefit of the possibility of concurrent sentences. [Citation.] The trial court and its clerk and probation officer are afforded the convenience of closing their files in a case which otherwise might remain undisposed of for years. Moreover, the procedure seeks to give prisoners the benefit of prompt sentencing or other final disposition while avoiding the government's expenditure of time and funds to produce imprisoned defendants for unnecessary court appearances.

[Citations.]" (*Hayes v. Superior Court*, *supra*, 6 Cal.3d 216, 222-223.) The court held that the same considerations apply equally to prisoners committed to prison in other states or to federal prison. "Section 1203.2a, however, is limited to defendants 'committed to a prison *in this State*.' (Italics added.)" (*Id.* at p. 223.) The equal protection clauses of the federal and state Constitutions, however, "require[] that classifications of those to whom the state accords benefits and those on whom it imposes burdens must be reasonably related to a legitimate public purpose. [Citations.] An out-of-state prisoner in petitioner's circumstances has the same interest as a California prisoner would have in the final disposition of an outstanding California conviction, and the burdens of the California detainer filed against this petitioner do not differ significantly from those of a detainer filed against one confined in California. Considerations of this state's expense and administrative and judicial convenience in reducing an outstanding conviction to judgment are the same whether the prisoner who asks to be sentenced in his absence is confined in California or in another state." (*Ibid.*) Because the Legislature already had indicated through other legislation that prisoners in other states and federal prisoners were to be accorded substantially the same rights with respect to having outstanding untried charges reduced to judgment or dismissed (see Pen. Code, §§ 1381, 1381.5, 1389 et seq.), the court concluded that, "the Legislature, by limiting the availability of section 1203.2a procedures to those 'committed to a prison in this State,' has made a classification"—i.e., in-state prisoners as opposed to out-of-state or federal prisoners—"which is not reasonably related to any legitimate public purpose."

22

(*Hayes*, at p. 223.) The court denied the defendant's petition for writ of mandate, but held that the defendant could apply for disposition of the San Bernardino charges by making a request in compliance with Penal Code section 1203.2a. (*Id.* at p. 225.)

In 1985, the First District Court of Appeal followed *Hayes* and also held that, under the equal protection clause of the California Constitution and the United States Constitution, an out-of-state prisoner could not be denied the benefits of Penal Code section 1203.2a. (*People v. Timmons* (1985) 173 Cal.App.3d 1000, 1005 (*Timmons*).)

In 1987, the Legislature responded with an amendment to Penal Code section 1203.2a, expressly providing that it applied to California probationers who were later committed to "a prison in this state or another state" upon the conviction of a new offense. (Stats. 1987, ch. 828, § 76, pp. 2610-2611.)

**b. Equal Protection Did Not Require Extending the Benefits of Penal Code Section 1203.2a to Misdemeanants Serving Short Sentences in County Jail**

On the other hand, in *People v. Blanchard* (1996) 42 Cal.App.4th 1842 (*Blanchard*), the appellate court rejected a contention that equal protection considerations require that Penal Code section 1203.2a apply to probationers who are later committed to a county jail on a misdemeanor sentence, instead of to prison on a felony charge, for a subsequent offense. (*Blanchard,* at p. 1847.) "The 'rational basis' test applies to [the defendant's] equal protection challenge, as the benefit afforded subsequently convicted probationers under section 1203.2a does not constitute a fundamental right and the statute is not 'inherently invidious.' We believe there is a rational basis for the Legislature's

23

decision to limit the benefits of section 1203.2a to probationers committed to prison. [¶] Probationers sentenced to county jail for a subsequent offense are not subject to a long term of imprisonment before an additional sentence (or other sanction) for the first conviction can be fixed. Since a county jail term may not exceed one year ([Pen. Code,] § 19.2) and is more often much shorter, a probationer sentenced to a county jail term typically would have such a determination in a relatively short time. Thus, the concurrent sentencing concerns underlying section 1203.2a are not sufficiently implicated in cases where probation is violated by a misdemeanor conviction to warrant application of the statute to such cases. [¶] Moreover, if section 1203.2a were judicially extended to encompass probationers sentenced to county jail, the minimal benefit the statute would afford such probationers would be outweighed by the increased burden on our judicial and penal systems. Subjecting probation officers to the reporting requirements of section 1203.2a in cases where the defendant's subsequent offense is a misdemeanor resulting in county jail incarceration, in addition to cases involving felony convictions, would impose increased costs and burdens on probation departments. [¶] Furthermore, the state's compelling interest in punishing probation violations and the underlying offenses giving rise to probation should not be thwarted by loss of jurisdiction under section 1203.2a where a defendant's subsequent offense is a misdemeanor resulting in a relatively short period of incarceration. In such misdemeanor cases the state's interest in punishing and deterring crime outweighs the defendant's minimal interest in discretionary concurrent sentencing under section 669 through application of

24

section 1203.2a.  [¶]  We conclude equal protection considerations do not mandate extension of the benefits of section 1203.2a to probationers who are sentenced to county jail."  (*Id*. at pp. 1847-1848.)

" 'The purpose of [Penal Code] section 1203.2a is to prevent inadvertent consecutive sentences which would deprive [a] defendant of the benefit of section 669, providing that sentence shall be concurrent unless the court expressly orders otherwise. [Citations.]'  [Citation.]"  (*People v. Wagner* (2009) 45 Cal.4th 1039, 1053.)  The defendant gets a potential, discretionary, benefit—the possibility, though not the certainty, of concurrent sentences—at the expense of the rights to counsel and to personal presence at the sentencing on the probation offense.

The benefit extended—the possibility of serving the probation sentence concurrently with the sentence on the subsequent offense—does not implicate a fundamental right.  Only a rational basis is needed to justify declining to extend the benefit of Penal Code section 1203.2a to misdemeanor defendants.  Twin reasons support the distinction made in *Blanchard*.  The first reason is the length of the sentence to be served on the subsequent offense.  Before the Realignment Act, the only sentences to be served in a county jail were short-term misdemeanor sentences.  Misdemeanor sentences were, and are, a maximum of one year, and in many cases far less than one year.  The potential to serve a sentence on the probation offense—in many cases a felony multi-year sentence—concurrently with a short-term misdemeanor sentence may rationally be viewed as too small a benefit to trigger the speedy-sentencing procedures of Penal Code

25

section 1203.2a. Applying Penal Code section 1203.2a to misdemeanor subsequent sentences could result in the loss of jurisdiction over the probation offense; where the probation offense is a felony, the loss of the court's ability to hold the probationer accountable for violations of probation, including imposition or execution of a felony-length prison term, can rationally be regarded as too high a price to pay for the minimal benefit afforded by Penal Code section 1203.2a to a probationer who commits a subsequent misdemeanor offense. Second, allowing Penal Code section 1203.2a to apply to short-term misdemeanor sentences becomes a case of the tail wagging the dog; the benefit (concurrent sentencing) is minuscule, while the increased burdens on the judicial and penal systems would be substantial. The state also retains a compelling interest in punishing probation violations, which could be thwarted by allowing a misdemeanant to petition for the benefit under Penal Code section 1203.2a.

The short length of misdemeanor sentences, coupled with the heavy burdens on the justice system caused by large numbers of newly eligible defendants, provides the rational basis for refusing to extend the benefit of Penal Code section 1203.2a to county jail misdemeanants. Accordingly, excluding misdemeanants from the application of Penal Code section 1203.2a does not violate Equal Protection.

*B. Felony Sentences Under the Realignment Act Are Felony Prison Sentences, Not Misdemeanor County Jail Sentences*

Here, we are concerned with felony prison sentences, which are ordered to be served in a county jail facility rather than a state prison facility. Under the Realignment

Act, some felony offenses are deemed insufficiently serious to require the sentence to be

served in a state prison. The intent of Penal Code section 1170, subdivision (h),[4] was to

_____

[4] Penal Code section 1170, subdivision (h), has undergone several recent amendments.

As of January 1, 2014, it provided:

"(h) (1) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years.

"(2) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense.

"(3) Notwithstanding paragraphs (1) and (2), where the defendant (A) has a prior or current felony conviction for a serious felony described in subdivision (c) of Section 1192.7 or a prior or current conviction for a violent felony described in subdivision (c) of Section 667.5, (B) has a prior felony conviction in another jurisdiction for an offense that has all the elements of a serious felony described in subdivision (c) of Section 1192.7 or a violent felony described in subdivision (c) of Section 667.5, (C) is required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1, or (D) is convicted of a crime and as part of the sentence an enhancement pursuant to Section 186.11 is imposed, an executed sentence for a felony punishable pursuant to this subdivision shall be served in state prison.

"(4) Nothing in this subdivision shall be construed to prevent other dispositions authorized by law, including pretrial diversion, deferred entry of judgment, or an order granting probation pursuant to Section 1203.1.

"(5) The court, when imposing a sentence pursuant to paragraph (1) or (2) of this subdivision, may commit the defendant to county jail as follows:

"(A) For a full term in custody as determined in accordance with the applicable sentencing law.

"(B) (i) For a term as determined in accordance with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion, during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court. The period of supervision shall be mandatory, and may not be earlier terminated except by court order. Any proceeding to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of Section 1203.2 or Section 1203.3. During the period when the defendant is under such supervision, unless in actual custody related to the sentence imposed by the court, the defendant shall be entitled to only actual time credit against the term of

*[footnote continued on next page]*

*[footnote continued from previous page]*
imprisonment imposed by the court.  Any time period which is suspended because a person has absconded shall not be credited toward the period of supervision.

"(ii) The portion of a defendant's sentenced term during which time he or she is supervised by the county probation officer pursuant to this subparagraph shall be known as mandatory supervision, and shall begin upon release from custody.

"(6) The sentencing changes made by the act that added this subdivision shall be applied prospectively to any person sentenced on or after October 1, 2011."

The salient portion is Penal Code section 1170, subdivision (h)(5), which provides that a realignment felony sentence may commit the defendant to a county jail either for the full term of imprisonment, or for a combination of imprisonment in custody and release with mandatory supervision.  (Pen. Code, former § 1170, subds. (h)(5)(A) & (B).)

On April 28, 2014, the Governor approved urgency legislation, amending Penal Code section 1170, subdivision (h)(5)(B)(ii), adding the language that the period of mandatory supervision begins upon the defendant's release from custody.  (Stats. 2014, ch. 12, § 1.)

A later amendment, effective on June 20, 2014, changed the dispositions under Penal Code section 1170, subdivision (h)(5), to provide that:

"(5) (A) Unless the court finds that, in the interests of justice, it is not appropriate in a particular case, the court, when imposing a sentence pursuant to paragraph (1) or (2) of this subdivision, shall suspend execution of a concluding portion of the term for a period selected at the court's discretion.

"(B) The portion of a defendant's sentenced term that is suspended pursuant to this paragraph shall be known as mandatory supervision, and shall begin upon release from custody.  During the period of mandatory supervision, the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court.  The period of supervision shall be mandatory, and may not be earlier terminated except by court order.  Any proceeding to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of Section 1203.2 or Section 1203.3.  During the period when the defendant is under such supervision, unless in actual custody related to the sentence imposed by the court, the defendant shall be entitled to only actual time credit against the term of imprisonment imposed by the court.  Any time period which is suspended because a person has absconded shall not be credited toward the period of supervision." (Stats. 2014, ch. 26, § 16.)

In other words, the court may still commit a realignment defendant to the county jail for the full term of the felony sentence, but may do so only upon a finding that, in the

*[footnote continued on next page]*

"realign" the treatment of certain low-level (albeit felony) offenders, so that they would serve their time in locally run community-based correctional programs, to facilitate the offenders' reentry into society. (See *People v. Sheehy* (2014) 225 Cal.App.4th 445, 450 [Fourth Dist., Div. Two].) It is possible for the sentencing court to commit a realignment defendant to the county jail for the full term of the felony sentence, although the Legislature has expressed a preference for commitment to a combination of incarceration in the county jail with a period of release from custody under mandatory supervision.

The People argue that Penal Code section 1203.2a is inapplicable to realignment defendants serving time in the county jail, because such defendants are not serving time "in prison," and some of them may not even be in custody. We disagree.

As we have stated above, the purpose of Penal Code section 1203.2a is to allow a defendant the possibility of serving concurrent sentences on the current felony offense and the probation offense. The provision is meant to prevent inadvertently forcing a defendant to serve a lengthy felony sentence before beginning to serve the term on the probation offense when there has been a violation of probation. The People's argument fails to take account of this purpose.

---

*[footnote continued from previous page]*
interest of justice, it is not appropriate to commit the defendant to a combination of county jail time and a period of mandatory supervision.

For our purposes, the possibilities still include incarceration in the county jail for the full felony sentence, or a combination of incarceration with release on mandatory supervision.

Realignment defendants are serving felony sentences, i.e., sentences of over one year, and many times multiple years. Their sentences are prison sentences, even if they are being served in a cell in a county jail rather than in a cell in a state prison. *People v. Hul* (2013) 213 Cal.App.4th 182 instructs that realignment inmates in a county jail are subject to general rules also applicable to state prison inmates. In the course of deciding what presentence custody conduct credits should be awarded to a defendant sentenced to county jail under the Realignment Act, but who committed his crime before the operative date of the Realignment Act, the *Hul* court remarked, "[a]s two preeminent sentencing authorities have explained, 'Except as to where the sentence is served, commitments under section 1170[, subdivision ](h), are being treated the same as state prison commitments.' Accordingly, '[i]t would seem reasonable for the defendant to receive "state prison" [presentence conduct] credit . . . .' (Couzens & Bigelow, Felony Sentencing After Realignment, Jan. 2013, p. 44, at <www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Jan. 29, 2013].) We agree." (*People v. Hul*, *supra*, 213 Cal.App.4th 182, 187.)

We also agree. Other amendments to the Penal Code after the Realignment Act have frequently reflected the legislative intent to treat felony sentences served in local facilities the same as felony sentences served in state prison: "Since passing the Realignment Act of 2011, the Legislature has amended the Penal Code in a number of ways to clarify how the new legislation is to be interpreted in conjunction with preexisting laws. For example, it was uncertain whether a county jail term under

30

section 1170, subdivision (h) qualified as a prior prison term for purposes of the one-year enhancement provision in section 667.5, subdivision (b). Section 667.5 was amended to clarify that a county jail term with mandatory supervision is to be considered a prior prison term. (Sen. Bill No. 1023 (2011-2012 Reg. Sess.); Stats. 2012, ch. 43, § 22.) Further, the one-year prior prison term enhancement is not applicable if a defendant is released from custody on the prior prison commitment five years before the new offense. (§ 667.5, subd. (b).) There was no guidance in the Realignment Act as to when this five-year 'washout' period for felons sentenced to county jail was to begin to run: from the end of the custody portion of a split sentence, from when the sentence was imposed, or from when the full sentence was served. Section 667.5 was modified to clarify that the five-year washout period begins after a defendant completes his entire sentence. (Sen. Bill No. 1023 (2011-2012 Reg. Sess.); Stats. 2012, ch. 43, § 22.) Similarly, the original version of the realignment legislation made it clear that if there was a multiple-count sentence with one crime mandating prison and the other mandating jail, if the terms were sentenced *consecutively*, the entire term was to be served in prison. (§ 1170.1, subd. (a).) However, there was no concomitant law indicating whether such a mixed count *concurrent* sentence required the entire term to be served in state prison. The Legislature clarified this issue by amending section 669, subdivision (d) to indicate that mixed concurrent terms should be served entirely in state prison. (Sen. Bill No. 1023 (2011-2012 Reg. Sess.); Stats. 2012, ch. 43, § 23.) When the Realignment Act was passed, section 1170, subdivision (h) did not contain a tolling provision in the event a defendant

31

absconded from, or violated any condition of, mandatory supervision.  If a defendant violated or did not report for mandatory supervision, and stayed on the lam until his period of supervision ended, there were no repercussions for his violation.  The Legislature passed Senate Bill No. 1023 to include a tolling provision applicable to any period in which a defendant on mandatory supervision absconds.  (§§ 1170, subd. (h)(5)(B)(i), 1203.2, subd. (a), as amended by Sen. Bill No. 1023 (2011-2012 Reg. Sess.); Stats. 2012, ch. 43, §§ 27, 30.)  The list goes on, and many issues remain unresolved.  The case at bar is just one more."  (*People v. Prescott* (2013) 213 Cal.App.4th 1473, 1477-1478.)

In *Prescott*, the issue was whether a Realignment Act defendant, ordered to serve a felony sentence in the county jail, was entitled to the same presumption applied to felons sentenced to state prison:  a presumption that the person sentenced to state prison did not have the ability to pay for defense attorney fee costs.  (Pen. Code, § 987.8, subd. (g)(2)(B) ["Unless the court finds unusual circumstances, a defendant sentenced to state prison shall be determined not to have a reasonably discernible future financial ability to reimburse the costs of his or her defense"].)  The *Prescott* court held that the language of Penal Code section 987.8 was unambiguous, and provided expressly that the presumption of inability to pay applied only to those persons "sentenced to state prison."  Because the defendant in *Prescott* had been sentenced to five years in the county jail under the Realignment Act, he was not entitled to the presumption applicable to state

32

prison inmates.  He was, however, entitled to notice and a hearing on his ability to pay, before an order to reimburse attorney fees could be entered.

In making its ruling, the *Prescott* court stated, "It is not the role of the judicial branch to amend legislation, even when a judge might think it is warranted.  We respect that separation of powers and leave it to the Legislature to address whether the section 987.8, subdivision (g)(2)(B) presumption should apply to felons now realigned to county jails." (*People v. Prescott*, *supra*, 213 Cal.App.4th 1473, 1478.)  The People urge this court also to defer to the Legislature to address whether or not Penal Code section 1203.2a "should apply to felons now realigned to county jails," reiterating that "[i]t is not the role of the judicial branch to amend legislation."

Drafting and enacting statutes are powers reserved to the Legislature, but deference to the Legislature's role does not deprive or relieve the judicial branch of its role:  the power, and indeed the obligation, to construe the statutes enacted by the Legislature.  (See *Fort Bragg Unified School Dist. v. Colonial American Cas. & Surety Co.* (2011) 194 Cal.App.4th 891, 909-910 ["Crafting statutes to conform with policy considerations is a job for the Legislature, not the courts; our role is to interpret statutes, not to write them"]; see also *Bodinson Mfg. Co. v. California E. Com.* (1941) 17 Cal.2d 321, 326 ["The ultimate interpretation of a statute is an exercise of the judicial power"]; *Golden v. City of Oakland* (1975) 49 Cal.App.3d 284, 288 ["it is the duty of the courts within the framework of the statutes, to interpret them so as to make them workable and

reasonable"].)  As in *Prescott*, we are called upon to interpret the language of the statute; unlike *Prescott*, the statutory language here is ambiguous.

The result in *Prescott* is affected by matters not present in the instant case. Notably, the statute at issue, , subdivision (g)(2)(B), expressly referred to "defendant[s] sentenced to state prison," not to persons "committed to a prison in this state . . . ."

In addition, there was a rational basis for the distinction between felons sentenced to serve their sentences in state prison, and realignment felons sentenced to serve their sentences in a county jail.  The Realignment Act permits a trial court to order that the defendant serve the full term of imprisonment in custody, or the court may impose a "split sentence," where a defendant may serve part of the prison term in custody, and part of the term out of custody under mandatory supervision, similar to release on probation. The possibility of release from custody under mandatory supervision could allow a realignment felony defendant to work and earn money with which to pay an order to reimburse attorney fees.  The difference in earning potential provided a reasonable basis for not presuming that realignment defendants sentenced to county jail were unable to pay court-ordered attorney fees.  (*People v. Prescott*, *supra*, 213 Cal.App.4th 1473, 1478.)  In other words, the two classes of felony defendants were not similarly situated with respect to earning capability.

The People urge that the possibility of a split sentence, spent partly in custody and partly out of custody, renders the sentence under the Realignment Act analogous to the shorter term misdemeanor jail sentences to which Penal Code section 1203.2a was held

34

not to apply in *People v. Blanchard*, *supra*, 42 Cal.App.4th 1842. Different considerations apply with respect to Realignment Act sentences under Penal Code section 1203.2a. Where a new felony conviction results in a commitment to a county jail, rather than state prison, the length of the felony sentence remains the same. Only the place of incarceration is different.

The *Prescott* court itself recognized the principle enunciated in *People v. Hul*, *supra*, 213 Cal.App.4th 182, that for most purposes of felony sentencing, the main difference under the Realignment Act is where the defendant will serve his or her term. The court expressly acknowledged that, "It is true that the 2011 Realignment Act did not change the existing rules about felony probation eligibility, the length of any felony sentence, or how the sentence is to be calculated under sections 1170 and 1170.1. Instead, the Realignment Act changed only the place where certain less violent felons serve their sentences. (*People v. Hul*[, *supra*,] 213 Cal.App.4th 182 [152 Cal.Rptr.3d 319].)" (*People v. Prescott*, *supra*, 213 Cal.App.4th 1473, 1478, fn. 2.) As to the particular defendant in *Prescott*, the court agreed that he had been "sentenced on a felony, to a term calculated under the felony sentencing law, to the same sentence that he would have received before realignment took effect. The only difference is that [the defendant] is now serving that felony sentence in a different correctional facility—county jail." (*Ibid.*)

35

Even though the place of incarceration is different, the length of the sentence is the same. It is true that the sentence might be divided between a portion of time in custody, and a portion out of custody under mandatory supervision. However, the defendant might also spend the entire term, even a multi-year term, in custody. A split sentence could also call for a custody portion of over one year, a factor that is not present in a misdemeanor jail sentence. That some defendants sentenced under the Realignment Act might have the custody portion of their sentences set at less than one year does not make the sentence equivalent to a short-term misdemeanor sentence. Realignment Act defendants are responsible for serving a felony-length sentence, regardless of the manner in which it is served, and the interest of felony defendants in disposing of, and having the opportunity to serve other pending sentences concurrently, is not affected by the direction to serve the Realignment Act felony in a county jail. Realignment Act defendants, sentenced to serve a felony-length term in a county jail instead of in the state prison, also do not represent a new population of persons eligible to apply for expedited sentencing under Penal Code section 1203.2a. Had they been sentenced to state prison, as would have been the case before the Realignment Act, they would be eligible to apply for the benefit offered under Penal Code section 1203.2a. Realignment Act defendants do not implicate the same concerns with extra burdens on the judicial and probation systems as the misdemeanants in *Blanchard*, who could only be sentenced to short-term sentences in the county jail.

36

There is no principled reason to exclude a felony defendant sentenced to county jail under the Realignment Act from the statutory right, granted to other felons, to petition for expedited sentencing, to serve both the new felony and the original probation offense concurrently. We discern three possible sets of circumstances to which Penal Code section 1203.2a could apply to a defendant sentenced to county jail under the Realignment Act.

First, the original probation offense might be a misdemeanor. The sentence for a misdemeanor results in a short-term commitment to the county jail. Even when a realignment defendant receives a "split" sentence, we discover no particular conflict in serving the misdemeanor jail term concurrently with the new felony.

Second, the original probation offense might be a felony that is not eligible for realignment sentencing. If the probation offense requires a state prison sentence, then the realignment defendant will be housed in state prison on both felony sentences. Both sentences could be served concurrently.

Third, the probation offense could be a felony that is eligible for realignment sentencing. In that situation, the sentence on the probation offense will, like the new felony sentence, be served in the county jail (or possibly partly in the county jail and partly under mandatory supervision). Again, nothing in the circumstances precludes a realignment defendant from serving both sentences concurrently.

To preclude a realignment defendant from seeking relief under Penal Code section 1203.2a, would cause the very harm Penal Code section 1203.2a was designed to prevent: the defendant would be required to wait until a felony-length sentence has been fully served before beginning service on the original probation offense. The two sentences could consist of multiple years each, and the defendant would have been forced to serve inadvertent consecutive sentences. A realignment defendant *is* committed to "a prison in this state," even if it is "county prison." (See *People v. Martinez* (2014) 226 Cal.App.4th 759 [Fourth Dist., Div. Two] [referring to a felony sentence to "county prison"].) The features of a prison sentence under the Realignment Act may differ somewhat from a straight sentence to state prison, but it is a felony prison sentence—or its functional equivalent—nonetheless.

Even if Penal Code section 1203.2a is deemed to refer only to "state prison" sentences, considerations of equal protection apply, just as they did to defendants serving prison sentences in other jurisdictions. The policies and benefits of Penal Code section 1203.2a are the same, whether a defendant serves a felony prison sentence in a state prison, or in a county jail "in this state."

That is, " 'Penal Code section 1203.2a establishes a procedure by which one committed to prison in California can obtain relief from the harmful uncertainty of other outstanding California convictions as to which he has been granted probation with imposition or execution of sentence suspended. That procedure benefits both the prisoner and the state. "Fairness to one committed to a state prison and proper administration by

38

the prison officials and the Adult Authority require that such outstanding convictions be reduced to judgment or be otherwise finally disposed of by termination of the trial court's jurisdiction." (*In re Perez* (1966) 65 Cal.2d 224, 228 [53 Cal.Rptr. 414, 418 P.2d 6].) When the prisoner requests imposition of sentence under section 1203.2a he [or she] receives the benefit of the possibility of concurrent sentences. [Citation.] The trial court and its clerk and probation officer are afforded the convenience of closing their files in a case which otherwise might remain undisposed of for years. Moreover, the procedure seeks to give prisoners the benefit of prompt sentencing or other final disposition while avoiding the government's expenditure of time and funds to produce imprisoned defendants for unnecessary court appearances.' ([*Hayes v. Superior Court*, *supra*, 6 Cal.3d 216], at p. 222, fn. omitted.) [¶] The California Supreme Court determined that the same 'considerations apply equally to the cases of defendants committed in California and the cases of defendants committed in other jurisdictions.' (*Id.* at p. 223.) The court concluded that, under the equal protection clause of the California Constitution and the United States Constitution, an out-of-state prisoner could not be denied the benefits of Penal Code section 1203.2a. Accordingly, it would appear that petitioner in the instant case is entitled to the benefits afforded under Penal Code section 1203.2a." (*People v. Timmons*, *supra*, 173 Cal.App.3d 1000, 1005.)

Notably, the California Supreme Court did not inquire into the specific details of prison sentences in other jurisdictions. A "state prison" sentence in another state might require a period of parole, or it might not. It might require service of all, or only a

portion, of the term imposed. It might or might not include rehabilitative and reintegration programs, or differing levels of security in incarceration. The California Supreme Court applied Penal Code section 1203.2a, as a matter of equal protection, to "state prison" sentences in other states, without detailing the precise incidents of such a "state prison" sentence.

The reasoning in *Hayes* and *Timmons* leads to the same conclusion here. There is no legitimate public purpose to be served by precluding a realignment defendant, committed to a felony prison sentence (to be served in a county jail and/or time on mandatory supervision), from obtaining the opportunity for concurrent sentencing on the original offense for which he or she was released on probation. The original probation offense will be served (1) in county jail as a misdemeanor, together with the realignment felony county jail sentence, or (2) in a state prison (both the probation offense and the realignment felony offense) if the probation offense is not eligible for sentencing under the Realignment Act, or (3) subject to a realignment felony sentence, in a county jail with perhaps a period of supervised release; the coordination of both sentences under the Realignment Act should not pose any difficulty to the sentencing court. There is no rational basis to conclude that defendant should not be permitted the opportunity to serve both sentences concurrently. It is not the building in which the sentence is being served (state prison vs. county jail) that matters, it is the service of a felony sentence with the opportunity to serve multiple sentences concurrently.

40

We conclude that the benefits of Penal Code section 1203.2a properly extended to defendant, as a person confined "in a prison in this state," even though her prison sentence was ordered under the Realignment Act to be served in a county jail and/or on mandatory supervised release.

III.  Defendant's Request for Sentencing in Absentia Substantially Complied With the Appropriate Formalities

Having concluded that defendant was not precluded from applying for relief under Penal Code section 1203.2a, we turn next to the question whether the paper she submitted was sufficient to comply with the statutory requirements.  The People argue that strict compliance with the statutory criteria is required, and that the failure to obtain an attestation from a prison warden was fatal to defendant's request for sentencing in absentia.

Here, defendant appears to have had assistance from a jail employee in filling out a computerized form under Penal Code section 1203.2a.  The form is entitled "Request for Disposition of Probation, Waiver of Appearance and Right to Attorney (P.C. 1203.2a)."  The page is designated as CDCR form "616," revised as of "09/08" (Sep. 2008).  The form recites that "Section 1203.2a requires that the probation officer notify the Court within 30 days after being notified of the defendant's commitment.  Failure to do so will deprive the court of jurisdiction to act in any case in which the defendant is on probation."  Defendant's form had printed check marks in boxes addressing the request both to the Riverside Superior Court and the Riverside Probation Department.  The form

41

had typed entries for defendant's probation conviction, and defendant's true name and date of birth. Check marks had been printed in both boxes of paragraph 3, requesting the court to "a. Make disposition of my probation as requested by law in the event I was previously granted probation and imposition of my sentence was suspended, OR [¶] b. Execute sentence at this time in the event a sentence was previously imposed and execution thereof suspended." Paragraph 4 recited defendant's awareness of her right to be represented by counsel at the revocation and sentencing hearing, and her right to be personally present. Paragraph 5 acknowledged that the court would be required to act within 90 days, if the imposition of sentence had been suspended, and within 60 days if sentence had been imposed and execution suspended.

On the succeeding page, printed check marks acknowledged in paragraph 6 that defendant wished to waive her right to be represented by an attorney, and she wished to waive her right to be personally present. Defendant handwrote her initials next to the "yes" boxes, indicating that she wished to waive her rights. Paragraph 7 was supposed to certify the address where defendant was institutionalized; defendant mistakenly handwrote the address of the criminal court building in Riverside. Defendant also placed her signature in the space required in paragraph 7, and dated the request. Under the signature line, the form advised in a parenthetical statement: "Pursuant to California Penal Code 1203.2a, the defendant's request must be signed in the presence of the Warden of the prison in which the defendant is confined, or the duly authorized representative of the Warden."

42

An attestation clause was printed on the form, averring: "I (Warden's printed first, middle and last name) _____ certify that I am the (Warden)(duly authorized representative of the Warden)(delete those that do not apply) and ATTEST that (defendant's printed name) <u>KIMBERLY MENDOZA</u> made and signed this request in my presence and that he/she states that he/she wishes the Court to execute sentence, or make disposition of his/her probation as required by law in his/her absence and without his/her being represented by an attorney at law in the case in which he/she was released on probation." No prison or jail official signed the attestation clause. Rather, defendant signed and dated it herself. Defendant also failed to complete additional information "to assist in the processing of the defendant's request," namely, the defendant's expected release date, and the date of commission of the crime "for which the defendant is currently undergoing sentence."

The People note that defendant made several errors in completing her request form: (1) she mistakenly marked both boxes in paragraph 3, rather than specifying whether she had been released with imposition of sentence suspended, or execution of an imposed sentence suspended; (2) defendant mistakenly wrote the address of the Riverside Superior Court instead of the institution where she was incarcerated; (3) defendant failed to obtain an attestation by a representative of a prison warden; and (4) she failed to provide the additional information of her release date and the date of the crimes for which she was confined. The People assert that, "[o]f the four defects in [defendant's] request for sentencing, the lack of attestation was fatal to it." We disagree.

43

Although some cases have recited that requests for sentencing under Penal Code section 1203.2a must be made in "strict compliance" with its provisions (see, e.g., *People v. Wagner*, *supra*, 45 Cal.4th 1039, 1054; *People v. Wendes* (1965) 237 Cal.App.2d 814, 816), the reason for requiring strict compliance is to ensure that the defendant requesting sentencing has actually waived his or her constitutional rights to personal presence at the proceedings, and to counsel. That is why Penal Code section 1203.2a requires attestation by the warden or the warden's representative: to ensure that the defendant has actually and personally waived his or her constitutional rights. However, the act of attestation is not a matter within the defendant's control. As defense counsel argued below, "To put the emphasis of 'strict compliance' on the custodial attestation would put the Defendant at the mercy of prison officials and county deputies. A warden or authorized official could simply refuse to attest the document or negligently delay the attestation to effectively deny the Defendant of the benefit of Penal Code § 1203.2a."

*Smith v. Superior Court* (1984) 159 Cal.App.3d 1172 (*Smith*), supports this view in an analogous context. *Smith* concerned a request for expedited sentencing under Penal Code section 1381, rather than Penal Code section 1203.2a.[5] A defendant requesting

---

[5] A defendant who has been imprisoned on a new charge, while sentence on another charge has been suspended (by, e.g., a grant of probation) may elect whether to seek speedy sentencing under either Penal Code sections 1381 or 1203.2a. (*People v. Wagner*, *supra*, 45 Cal.4th 1039, 1053-1055 [a defendant placed on probation with imposition of sentence suspended who is subsequently imprisoned on another charge may opt to demand speedy sentencing under section 1381 rather than under section 1203.2a].) Penal Code section 1381 provides in relevant part: "Whenever a defendant has been convicted, in any court of this state, of the commission of a felony . . . and has been sentenced to and has entered upon a term of imprisonment in a state prison . . . and at

*[footnote continued on next page]*

44

speedy sentencing under Penal Code section 1381 must "have delivered to [the] district attorney written notice of the place of his . . . imprisonment or commitment and his . . . desire to be brought to trial . . . . The sheriff, custodian or jailer shall endorse upon the written notice of defendant's desire to be brought to trial or for sentencing the cause of commitment, the date of commitment and the date of release." In *Smith*, the defendant sent notices to the proper district attorney on two occasions; one notice was received on August 15, 1983, and the other on November 29, 1983. The first demand did not contain an "endorsement" by the sheriff, custodian or jailer. The second was accompanied by a form on which the Department of Corrections certified that the defendant was committed to its custody, and set forth the defendant's minimum eligible release date and the maximum expiration date of his commitment. Also attached was a copy of an Alameda County bench warrant. (*Smith v. Superior Court*, *supra*, 159 Cal.App.3d 1172, 1174.) The defendant made both demands on a form furnished to him

---

*[footnote continued from previous page]*
the time of the entry upon the term of imprisonment . . . there is pending, in any court of this state, . . . any criminal proceeding wherein the defendant remains to be sentenced, the district attorney of the county in which the matters are pending shall bring the defendant . . . for sentencing within 90 days after the person shall have delivered to said district attorney written notice of the place of his or her imprisonment . . . and his or her desire to be brought . . . for sentencing . . . . In the event that the defendant is not brought to trial or for sentencing within the 90 days the court in which the charge or sentencing is pending shall, on motion or suggestion of the district attorney, or of the defendant . . . or on its own motion, dismiss the action." Penal Code section 1381 differs from Penal Code section 1203.2a with respect to a longer timeline, a different notice, the retention of the right to appear for sentencing, and the consequence (dismissal of the violation of probation proceeding rather than termination of probation). (*People v. Wagner*, *supra*, 45 Cal. 4th 1039, 1054-1055, 1057.)

by the Department of Corrections. In neither case did the form include a space for an "endorsement," nor did it advise the defendant that an endorsement was required by statute. The court stated, "Not surprisingly no endorsement was appended. [Fn. omitted.] [¶] The People see that omission as crucial. They read section 1381 not only as requiring a prisoner to supply the information specified therein but also as placing upon him the responsibility of obtaining the endorsement of the jailer of his date of commitment and his scheduled date of release. Until and unless such an endorsement is affixed, the People argue, the demand is legally incomplete and the 90-day clock of section 1381 does not begin ticking. [¶] We read the statute much differently. Endorsement is the concern of the 'sheriff, custodian or jailer,' not the prisoner. Nor can completion by a jailer of such an endorsement be viewed as a condition precedent to the validity of a section 1381 notice. Neither the Legislature nor the courts are blind to the delay that inheres in the prison mail system. This case provides adequate examples of something less than express mail handling: petitioner's first demand is received by the prosecutor more than two weeks after it is sent and his second mailing takes more than ten days to cover the same ground. To superimpose on this reality a finding that the Legislature intended that a demand for a speedy trial not be viewed as a demand at all unless and until the jailer gets around to endorsing it would reduce the statute to a rather cruel joke." (*Id*. at p. 1176.)

We view the requirement of attestation under Penal Code section 1203.2a in the same light as the endorsement required under Penal Code section 1381. Attestation, like

46

endorsement, is the responsibility of the warden or duly authorized representative,[6] and not the obligation of the prisoner.  It is not a condition precedent to a valid demand for sentencing in absentia; otherwise, any such request could be defeated by the expedient of institutional neglect, or worse.  The purpose of the attestation is to ensure that an incarcerated defendant has intentionally requested sentencing in absentia, and has actually waived the rights to counsel and to be present.  The circumstances here demonstrate defendant's clear intention to request sentencing in absentia, and the waiver of her constitutional rights.  Defendant's written demand did "strictly comply" with the requirements of Penal Code section 1203.2a, in terms of evidencing an actual request to terminate probation and proceed to sentencing, and an actual waiver of her right to be present and her right to an attorney.

Because defendant made a demand for sentencing in absentia, and the trial court failed to act on that request, defendant's motion to discharge her from probation should have been granted.  It was only because the trial court refused to recognize the validity of defendant's sentencing demand—based on its view that the lack of attestation was a fatal failure to comply with the statute—that defendant withdrew her motion to dismiss, and

---

[6] The People had argued that Penal Code section 1203.2a could not apply to realignment defendants, in part because there is no "warden" of a county jail to make the required attestation.  Because equal protection principles mandate that the benefits of Penal Code section 1203.2a cannot be denied to realignment defendants, compliance with the attestation portion of the statute must also be extended to encompass the officer in charge of a county prison (county jail) housing such realignment defendants.  The functional equivalent of a warden (officer in charge), or designated representative of such officer, must be deemed the appropriate officer to make the attestation.

47

entered into the plea bargain reinstating her probation. Under the provisions of Penal Code section 1203.2a, however, the trial court's failure to act on defendant's petition for over 60 days after it was filed in January 2013 deprived the court of jurisdiction to impose any sentence or reinstate probation on the Riverside County probation offense. The trial court should have granted defendant's motion to terminate her probation. (See *Pompi v. Superior Court*, *supra*, 139 Cal.App.3d 503, 508.)

The trial court's order reinstating defendant on probation must be reversed, with directions to terminate defendant's probation, and to discharge her from probation.

DISPOSITION

Defendant filed a demand for sentencing in absentia that substantially complied with the requirements of Penal Code section 1203.2a. Equal protection considerations mandate that Penal Code section 1203.2a applies to offenders sentenced to a "prison in this state," albeit a "county prison" under the Realignment Act. The lack of attestation is not a condition precedent to the validity of a request under Penal Code section 1203.2a; the making of an attestation is not a matter within the defendant's control, and is intended to ensure the defendant's actual waiver of constitutional rights in requesting sentencing in absentia.

The trial court's failure to act on defendant's request within 30 or 60 days deprived the court of jurisdiction to sentence defendant with respect to the probation offense. Accordingly, the order reinstating probation (and requiring defendant to withdraw her motion for dismissal as a condition of her plea bargain) must be reversed. The matter is remanded with directions to the trial court to terminate defendant's probation and to discharge her from probation.

CERTIFIED FOR PUBLICATION

McKINSTER

J.

We concur:

RAMIREZ

P. J.

HOLLENHORST

J.